Argued 19 June, decided 26 June, 1906.

### STATE v. JEWETT.

85 Pac. 994.

SUBORNATION OF PERJURY—SUFFICIENCY OF INDICTMENT AS TO MANNER OF COMMITTING THE CRIME.

1. An indictment for subornation of perjury is sufficient as to the manner of being sworn when it appears therein that the witness was "in due manner sworn," since that is equivalent to a charge that such witness was "duly sworn."

IDEM—CHARGE AS TO WHERE THE FALSE STATEMENT WAS PRESENTED.

2. An indictment charging the subornation of perjury by procuring a false oath to be made and setting out the entire paper, which is addressed to a certain public board, need not specifically charge that the oath was presented to any one, since the facts in that particular are apparent from the paper itself.

SAME—IDENTITY OF PERSON.

3. Where an indictment for subornation of perjury alleged to have been committed with reference to an application for the purchase of school lands charges that the applicant made her application to purchase the land described for her own benefit, and not for the purpose of speculation, that she had made no contract or agreement, express or implied, for the sale or disposal of the lands, and that the application, oath and, jurat were of the following tenor, which are then set out in full, such allegations sufficiently show that the affidavit had reference to the application, that the person who signed the affidavit is the same person who signed the application, and that the lands described in the application are identical with those referred to in the affidavit.

SAME—CHARGING POWER TO RECEIVE AN OATH.

4. The State Land Board of this state being a board provided for by the constitution, it is not necessary that an indictment for suborning perjury before such board shall show that the board was duly constituted or had authority to consider the paper in which it is claimed the perjury was committed.

SAME—CHARGING THE PURPOSE OF THE FALSE OATH.

5. An indictment for subornation of perjury in connection with an application to purchase school lands alleged that when the applicant was

(48th Or.—37)

sworn she did not intend to purchase the lands for her own benefit as she affirmed, but for the purpose of speculation, and had prior thereto contracted to sell the land to defendant, which contract was then in full force, and that defendant knowingly and willfully incited her to testify falsely "in the manner aforesaid for the purposes herein specified." The indictment also charged that defendant procured her to take her oath to the effect that she then and there made application to purchase the lands, and that it was necessary for her to make such oath in order to procure such school lands from the state, and that she acquired the lands from the state by means thereof for the purposes specified. *Held,* that such allegations were sufficient to show the purpose for which defendant procured the applicant to make, and for which she made the false oath and affidavit, and for which such affidavit was used.

SAME—CHARGING DETAILS OF FALSITY.

6. Where an indictment for subornation of perjury in connection with an application to purchase school lands alleges that at the time the applicant made the affidavit she did not intend to purchase the lands for her own benefit, but for speculation, and then had a contract to sell the lands to defendant, and that she well knew that her application was made for the purposes specified, the indictment is not objectionable in not alleging that the applicant had made a contract for the sale or disposal of the lands in case she was permitted to purchase, since the existence of the contract may be inferred from what is stated.

SAME—TERMS OF CONTRACT.

7. Under B. & C. Comp., § 1321, declaring that an indictment for subornation of perjury need not set forth the pleadings, record, or proceedings with which the oath is connected, an indictment for subornation of perjury alleged to have been committed in connection with an application to purchase school lands in which it was charged the applicant falsely stated under oath that she had no contract to sell or dispose of the lands, was not objectionable for failure to set out the terms of the alleged contract or the facts showing such contract.

SAME—KNOWLEDGE OF FALSITY.

8. Where an indictment for subornation of perjury in connection with an application to purchase certain school lands alleged that the applicant falsely, knowingly, and willingly swore that the proposed purchase was for her own benefit and not for speculation, and that she had made no contract for the sale of the lands, but that she at that time did not intend to purchase for her own benefit, and had a contract to sell to defendant, and knew that her application was made for such purpose, and that defendant knowingly procured her to testify falsely, and knew that she did not believe her testimony to be true, the indictment sufficiently alleged knowledge on the part of both parties.

CONSTRUCTION OF INDICTMENTS.

9. An indictment is sufficient if it contains all the necessary averments directly stated or by fair inference, and is not bad because such statements must be separated from superfluous matters inappropriately added.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE HAILEY.

On April 28, 1905, the grand jury of Marion County, Oregon, returned the following indictment, omitting the formal parts, against the defendant:

"F. W. Jewett is accused by the grand jury in and for Marion County and State of Oregon, by this indictment, of the crime of subornation of perjury, committed as follows:

The said F. W. Jewett, on the 6th day of August, 1902, in the County of Marion and State of Oregon, then and there being, did then and there feloniously, willfully, knowingly and corruptly suborn, incite, instigate and procure one Emily A. Thatcher to appear in person before A. O. Condit, a notary public for the State of Oregon, to take her corporal oath before said notary public and upon her oath so taken to testify, depose and swear before said notary public in substance and effect that she, the said Emily A. Thatcher, then and there made application to purchase the following described school land, to wit: The northwest quarter of section 16, township 11 south, range 27 east of Willamette Meridian in Grant County, Oregon, containing one hundred and sixty acres; that the proposed purchase was made for the benefit of her, the said Emily Thatcher, and not for the purpose of speculation, and that she, the said Emily A. Thatcher, had made no contract or agreement, expressed or implied, for the sale or disposition of said aforedescribed land, which said application, oath and jurat were then and are of the tenor following, to wit:

'APPLICATION TO PURCHASE.

To the State Land Board:

I hereby apply to purchase the following described school land, situated in Grant Conuty, Oregon, to wit: the northwest quarter of section 16, township 11 south, range 27 east of Willamette Meridian, all in township 11, range 27 east, containing 160 acres, and I agree to pay for the same according to law.

Emily A. Thatcher.

(Signature of Applicant.)

This 6th day of August, A. D., 1902.

State of Oregon, County of Marion—ss.

I, Emily A. Thatcher, being first duly sworn, say that I am over eighteen years of age; that I am a native born citizen of the United States; that the proposed purchase is for my own benefit and not for the purpose of speculation; that I have made no contract or agreement, express, or implied, for the sale or disposition of the land applied for in case I am permitted to purchase the same, and that there is no valid adverse claim thereto.                          Emily A. Thatcher.

(Signature of Applicant.)

Subscribed and sworn to before me this 6th day of August, 1902.                          A. O. Condit,

(Seal.)                          Notary Public for Oregon.'

"And the said Emily A. Thatcher in consequence of and by means of said felonious, willful and corrupt subornation, incitement, procurement and instigation of the said defendant F. W. Jewett, on said 6th day of August, 1902, in said county and state, did then and there appear in person before the said A. O. Condit, a notary public for the State of Oregon, and then and there was in due manner sworn by the said A. O. Condit as such notary public, and then and there testified and took her oath before the said A. O. Condit as such notary public to the effect that the matters and facts set forth in said application and certificate were true; the said A. O. Condit then and there being a duly appointed, acting and qualified notary public of and for the State of Oregon and as such notary public then and there being competent and authorized by law to administer the said oath to her, the said Emily A. Thatcher, and the matter in which the said Emily A. Thatcher, was so sworn and took her oath as aforesaid before the said A. O. Condit as such notary public, as aforesaid, being then and there a matter in which a law of the State of Oregon then authorized an oath to be administered and then and there, at and upon the taking of the said oath by the said Emily A. Thatcher before said A. O. Condit, notary public, became and was a material matter and question under the laws of Oregon whether she, the said Emily A. Thatcher, was over eighteen years of age; a citizen of the United States; that the proposed purchase was for her, the said Emily A. Thatcher's own benefit and not for the purpose of speculation; whether she, the said Emily A. Thatcher, had made a contract or agreement, expressed or implied, for the sale or disposition of said land in case she, the said Emily A. Thatcher, was permitted to purchase the same and whether there was any valid adverse claim thereto, the same being then and there material and necessary in order to enable her, the said Emily A. Thatcher, to procure and acquire by purchase from the State of Oregon said aforedescribed school lands, said school lands then and there being the property of and owned by the State of Oregon and subject to sale in the manner provided by law, and the said Emily A. Thatcher being so sworn as aforesaid, then and there, upon her corporal oath so taken as aforesaid, did feloniously, falsely, knowingly, willfully and corruptly depose, swear and testify, amongst other things, before said A. O. Condit, notary public, as aforesaid, in substance and effect that she, the said Emily A. Thatcher, proposed to purchase said aforedescribed school lands for her, the said Emily A. Thatcher's own benefit and not for the purpose of speculation, and that she, the said Emily A. Thatcher had made no contract or agreement, expressed

or implied, for the sale or disposition of the aforedescribed land so applied for in case she, the said Emily A. Thatcher, was permitted to purchase the same; whereas in truth and in fact the said Emily A. Thatcher, at said time when she was so sworn and took her oath before said A. O. Condit, notary public as aforesaid, did not intend to purchase said school lands from the said State of Oregon for her, the said Emily A. Thatcher's own benefit but for the purpose of speculation and had, prior thereto, made a contract for the sale and disposition of said land to F. W. Jewett, said contract then and there being in full force and effect, and by reason of said false, fraudulent, felonious and corrupt oath so taken by the said Emily A. Thatcher before the said A. O. Condit, as such notary public, she, the said Emily A. Thatcher, was thereby enabled to and did file said application with the clerk of the State Land Board of the State of Oregon and acquired by means thereof said lands from the State of Oregon for the purposes herein specified; and whereas in truth and in fact the said Emily A. Thatcher, at the time of making said application and taking her corporal oath before the said A. O. Condit, notary public as aforesaid, well knew that said application was made for the purposes herein specified; and whereas in truth and in fact the said F. W. Jewett then and there feloniously, knowingly, willfully and corruptly suborned, incited, instigated and procured the said Emily A. Thatcher to testify and depose falsely in the manner aforesaid for the purposes herein specified; and whereas in truth and in fact the said Emily A. Thatcher, at the time she was so sworn and took her oath and testified as aforesaid before the said A. O. Condit as such notary public, did not believe to be true the said matters so by her there testified, deposed and sworn as hereinbefore specified and whereas in truth and in fact the said defendant F. W. Jewett, at the time and place he so suborned, incited, instigated and procured the said Emily A. Thatcher to take her oath and to testify, depose and swear falsely as aforesaid, well knew that the said Emily A. Thatcher did not then and there believe to be true the said matters which he, the said defendant, F. W. Jewett, so then and there suborned, incited, instigated and procured her, the said Emily A. Thatcher, to testify, depose and swear before the said A. O. Condit, as aforesaid; and whereas in truth and in fact the said defendant, F. W. Jewett, did not then and there believe to be true the matters which he, the said defendant, F. W. Jewett, suborned, incited, instigated and procured the said Emily A. Thatcher to testify, depose and swear as hereinbefore specified, and the said defendant, F. W. Jewett, did in the manner and form aforesaid, feloniously, falsely, willfully and cor-

ruptly commit the crime of subornation of perjury, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

On January 4, 1906, the defendant demurred to this indictment, "for the reason that the facts stated therein do not constitute a crime," which demurrer was sustained by the lower court and the defendant discharged, and the state thereupon appealed to this court.        REVERSED.

For the State there was a brief over the names of *A. M. Crawford*, Attorney General; *J. H. McNary*, District Attorney, and *L. McNary*, with oral arguments by *Mr. John H. McNary* and *Mr. Charles L. McNary.*

For respondent there was a brief over the names of *Frederick Van Rensselaer Holman*, *William David Fenton* and *George Greenwood Bingham*, with oral arguments by *Mr. Holman* and *Mr. Fenton.*

MR. JUSTICE HAILEY delivered the opinion of the court.

The defendant was indicted for subornation of perjury in violation of Section 1875, B. & C. Comp., which provides:

"If any person authorized by any law of this state to take an oath or affirmation, or of whom an oath or affirmation shall be required by such law, shall willfully swear or affirm falsely in regard to any matter or thing concerning which such oath or affirmation is authorized or required, such person shall be deemed guilty of perjury, and if any person shall procure any other to commit the crime of perjury, such person shall be deemed guilty of subornation of perjury."

Section 1321, B. & C. Comp., provides:

"In an indictment for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the crime was committed, and in what court, or before whom, the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter in which the perjury is assigned; but the indictment need not set forth the pleadings, record or procedings with which the oath is connected, nor the commission or authority. of the court or person before whom the perjury was committed."

Under this last section it is sufficient if the indictment sets

forth, first, the substance of the matter in respect to which the crime is committed; second, before whom the oath alleged to be false was taken; third, that the person before whom it was taken had authority to administer it; and, fourth, proper allegations of the falsity of the matter on which the perjury is assigned. The defendant raises six specifiic objections to the sufficiency of the indictment in this case, which will be discussed in their order.

1. It is contended that the indictment does not allege that Emily A. Thatcher was duly sworn, and that the allegation "was in due manner sworn" is not sufficient, and is not equivalent to the expression "duly sworn." This contention is not tenable, for it is sufficient to charge that the person was duly sworn without setting forth the form or manner in which it was done: *State* v. *Spencer,* 6 Or. 153; 2 McClain, Crim. Law, § 874; 16 Ency. Pl. & Pr. 331. The words "in due manner" have the same meaning as the word "duly:" 3 Words & Phrases, 2259-2264; Anderson's Dict. Law, 385; 3 Century Dict. & Enc. 1795.

2. It is next claimed that the indictment does not allege that the application set out therein was made to the State Land Board of the State of Oregon, or that the affidavit had reference to that application, or that the person who signed the application is the same person who signed the affidavit, or that the lands described in the application are those referred to in the affidavit. The application is addressed to the State Land Board and is for the purchase of lands in Grant County, Oregon, and a copy of it is set out in the indictment. There is only one State Land Board in this state, and no board outside of the state has control of any of the state school lands within this state, so the application speaks for itself.

3. The indictment charges "that she, the said Emily A. Thatcher, then and there made application to purchase the following described school land, to wit," and then describes the lands set out in the application; that the proposed purchase was made for the benefit of her, the said Emily A. Thatcher, and not for the purpose of speculation, and that she, the said Emily A. Thatcher, had made no contract or agreement, express or

implied, for the sale or disposition of said aforedescribed lands, which said application, oath and jurat were then and there and are of the tenor following, to wit, and then sets out the application and affidavit in full. These allegations are sufficient to show that the affidavit had reference to the application and that the Emily A. Thatcher mentioned in each was one and the same person, and that the lands described in the application are those referred to in the affidavit.

4. It is claimed that it should have been alleged in the indictment that the Oregon State Land Board was duly constituted as required by law and had authority or jurisdiction to consider or act upon the application of Emily A. Thatcher, and to allow her to acquire the lands. Under Section 5 of Article VIII of the Constitution of Oregon, the Governor, Secretary of State and State Treasurer constitute the board of commissioners for the sale of state lands, and are, therefore, a constitutional board, and we do not think it necessary, in a case of this kind, to allege that such board was duly constituted, or to specify its authority over state lands.

5. It is next contended that it is not alleged in the indictment that there was any agreement or understanding between Emily A. Thatcher and the defendant that the application, oath, testimony or affidavit was made to be used to purchase or acquire the land described in the indictment or any other land; nor that said oath or affidavit was so used; nor that the defendant procured her to commit perjury for the purpose of enabling her to purchase said land or any other land. The indictment alleges that at the time Emily A. Thatcher was sworn before the notary she did not intend to purchase said lands for her own benefit, but "for the purpose of speculation, and had, prior thereto, made a contract for the sale and disposition of said land to said Jewett, said contract then and there being in full force and effect," and that the defendant knowingly and willfully incited her to testify falsely "in the manner aforesaid for the purpose herein specified." It also alleges that the defendant procured her to take her oath to the effect that she "then and there made application to purchase" the lands mentioned in the indictment, and that

it was necessary for her to make the oath in order to enable her to procure and acquire from the state "the said aforedescribed school lands," and that she acquired by means thereof said lands from the State of Oregon for the purposes specified. This, we think, is a sufficient allegation of the facts showing the purpose for which defendant procured her to make and for which she made the false oath and affidavit and for which it was used. These allegations clearly show that at the time she made the oath she did so by agreement with defendant and at his instigation and to be used for the purpose of purchasing the lands from the State of Oregon, and that it was so used. In addition it is also alleged that the testimony alleged to be false was material, thus bringing the indictment within the two methods used for showing the materiality of the testimony alleged to be false in indictments for perjury, to wit: (1) To allege generally that the testimony in question was material, or (2) to allege in the indictment facts which render the materiality of the testimony clearly apparent: 16 Ency. Pl. & Pr. 343; 2 McClain, Crim. Law, §§ 878, 879.

6. Objection is made that there is no averment in the indictment that Emily A. Thatcher had made a contract for the sale or disposition of the lands in case she was permitted to purchase the same, and it is claimed that the indictment should set out the terms of any alleged contract or the facts showing such alleged contract. The first objection is fully answered by the allegations to the effect that at the time she made the affidavit she did not intend to purchase the lands for her own benefit but for the purpose of speculation, and then had a contract to sell them to defendant, and that she well knew that her application was made for the purpose specified.

7. As to the second objection, the statute (Section 1321, B. & C. Comp.), says "the indictment need not set forth the pleadings, record or proceedings with which the oath is connected," and we think it unnecessary, in a criminal action of this character, to allege the terms of the contract.

8. It is claimed that it is not alleged in the indictment that Emily A. Thatcher knew that any of the statements in her al-

leged oath were false, or that the respondent knew that any of the statements were false, or knew that she knew that they were false. The indictment alleges that she falsely, knowingly and willfully swore that the proposed purchase was for her own benefit, and not for the purpose of speculation, and that she had made no contract for the sale of the lands, and that at the time she so swore she did not intend to purchase for her own benefit, and then had a contract to sell to defendant, and that she knew her application was made for such purposes, and that the defendant knowingly procured her to testify falsely in the manner aforesaid, and knew that she did not believe her testimony to be true. These facts, we think, sufficiently alleged knowledge on the part of both parties, if such allegation is necessary under our statute: *State* v. *Ah Lee,* 18 Or. 542 (23 Pac. 424).

9. If the necessary averments appear in any form or may by fair construction be found anywhere within the text of the indictment, it is sufficient: *United States* v. *Howard* (D. C.) 132 Fed. 334. While the indictment in this case is unnecessarily incumbered by what one author has been pleased to call "immense masses of surplusage," yet we think it contains sufficient allegations to constitute the crime of subornation of perjury. It sets forth (1) the substance of the matter in respect to which the crime was committed; that is, the application to purchase school lands and the oath required therefor; (2) the name of the person before whom the oath was taken; (3) that he had authority to administer it; (4) proper allegations of the falsity of the testimony given before him and the materiality of the matter testified to; (5) proper charges of procurement on the part of the defendant, and those under Section 1321, B. & C. Comp., and No. 18 of the Forms of Indictments, 1 B. & C. Comp. p. 752 are sufficient to enable a person of common understanding to know what is intended: B. & C. Comp. §1314.

The judgment of the lower court will therefore be reversed, and the cause remanded for further proceedings not inconsistent with this opinion. REVERSED.