THE STATE OF NEVADA, Respondent, *v.* HARRY
G. PRAY, ALSO KNOWN AS H. G. PRAY, APPEL-
LANT.

No. 3461

April 9, 1947.                                 179 P.2d 449.

*Oliver C. Custer,* of Reno, *Clarence M. Hawkins,* of Auburn, California, and *H. R. Cooke,* of Reno, for Appellant.

*Alan Bible,* Attorney General, *Geo. P. Annand* and *Homer Mooney,* Deputy Attorneys General, and *Harold O. Taber,* District Attorney, of Reno, and *C. Lester Zahniser,* Deputy District Attorney, of Sparks, for Respondent.

## OPINION

By the Court, Horsey, J.:

The appellant was convicted, in department No. 1 of the Second judicial district court of the State of Nevada,

in and for the county of Washoe, of the crime of subornation of perjury. His motion for a new trial was denied by said court, and he has appealed to this court from the judgment and from the order denying his motion for a new trial.

The appellant has presented seven assignments of errors. We have carefully considered each and all of those assignments and the numerous questions raised in their support, but will not deal with them herein in the order in which they have been presented, but, rather, in the order which seems to facilitate the reaching of a final determination of the case, without passing upon matters not essential thereto.

In his assignment of error No. V(b), the appellant assigns that no public offense was charged in the information, in that it fails to allege the name of the officer before whom the oath, if any, was taken, and fails to allege that any oath was administered to Mrs. Bogdewicz relative to the matters alleged in count I of said information. Point two of appellant's opening brief presents in detail the particulars wherein the appellant contends that the information (count I) fails to state facts sufficient to constitute a public offense, among which are paragraphs 1, 2, and 4, on page 13, as follows:

1. It fails to allege before whom the oath alleged to be false was taken;

2. It fails to allege that the unnamed person, or officer, before whom an oath, if any, was taken, had the necessary, or any, authority to administer said, or any, oath.

4. It fails to allege what oath is claimed to have been taken. We agree with counsel for appellant that the Nevada statute, sec. 10864, N.C.L. 1929, vol. 5, in all essential respects, is a reenactment of the English Statute 23, Geo. II, chap. 11.

Our said Nevada statute, sec. 10864, is as follows: "Perjury, What Deemed Sufficient. § 216. In an indictment or information for perjury or subornation

of perjury, it is sufficient to set forth the substances of the controversy or matter in respect to which the offense was committed, and in what court, or before whom, the oath alleged to be false was taken, and that the court or the person before whom it was taken had authority to administer the same, with proper allegations as to the falsity of the matter of which the perjury is assigned; but the indictment or information need not set forth the pleadings, record or proceedings with which the oath is connected, or the commission or the authority of the court or person before whom the perjury was committed."

It thus appears that among the allegations required in an indictment or information for perjury or subornation of perjury, to render such indictment or information sufficient, are:

1. That an oath alleged to be false was taken by the defendant;

2. In what court, or before whom, such oath alleged to be false was taken;

3. And that the court, or the person, before whom the oath was taken had authority to administer the same.

In 48 C.J. 875, in dealing with the necessity, in an indictment or information, of alleging in what court or before whom such oath alleged to be false was administered, it is stated: "* * * the general rule is that the indictment or information should, by proper designation, show by whom the oath was administered, and the omission of such showing is fatal." Citing Hilliard v. United States, 5 Cir., 24 F.2d 99; Wilson v. State, 115 Ga. 206, 41 S.E. 696, 90 Am.St.Rep. 104; Kerr v. People, 42 Ill. 307; State v. Gross, 175 Ind. 597, 95 N.E. 117; Hitesman v. State, 48 Ind. 473; State v. Harlis, 33 La.Ann. 1172; State v. Thothos, 147 Mo.App. 596, 126 S.W. 797; Jefferson v. State, Tex.Cr.App., 29 S.W. 1090.

In the early Illinois case of Kerr v. People, supra, it is stated:

"The indictment omits to aver before whom the affidavit, upon which perjury is assigned, was made. This averment has always been considered as material and matter of substance. The accused has an undoubted right to be informed before whom it is alleged he took the oath charged to be false. He has the right in his defense to prove that the person administering the oath did not have legal and competent authority for the purpose. In the absence of such authority there could be no perjury, and hence the necessity of an averment as to who administered the oath, and that he had legal and competent authority for the purpose. This was the rule announced in the case of Morrell v. People, 32 Ill. 499, and no reason has been presented why it should not govern this case. A party accused of crime should be fully advised by the indictment of all the material facts relied upon to establish the offense of which he stands charged. This indictment fails to do so, and was therefore materially defective.

"The court below therefore erred in refusing to quash the indictment, or to arrest the judgment; and the judgment of the court below must be reversed and the cause remanded."

The case of State v. Shupe, 16 Iowa 36, is reported in 85 Am.Dec. 485, and in an exhaustive note, pages 488–501, is the following, on page 496: "The name of the person or court administering the oath must be averred, and a variance in this respect is fatal: 2 Wharton's Crim.Law, sec. 1287; Kerr v. People, 42 Ill. 307; State v. Ellison, 8 Blackf. 225; Hitesman v. State, 48 Ind. 473; State v. Schultz, 57 Ind. 19; State v. Harlis, 33 La.Ann. 1172; Guston v. People, 61 Barb. 35; Geston v. People, 4 Lans. 487; State v. Street, 1 Murph., S.C., 156, 3 Am.Dec. 682; State v. Oppenheimer, 41 Tex. 82; United States v. Wilcox, Fed.Cas.No.16,692, 4 Blatchf. 391; and where the perjury is alleged to have been committed by a witness in the trial of an action in a certain court, it is sufficient to allege that the oath was

taken in that court, without designating the officer by whom it was administered: State v. Spencer, 6 Or. 152."

And in 20 Cal.Jur. p. 1015, it is stated: "Sec. 9. In General—At common law it was necessary, in an indictment for perjury, to set out the pleadings in the case in which the perjury was alleged to have been committed. This rule is abrogated in California, it being provided by the Penal Code that 'in an indictment or information for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed, and in what court and before whom the oath alleged to be false was taken, and that the court, or the person before whom it was taken, had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment or information need not set forth the pleadings, record or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed.' * * *"

It is clear, from the language of our statute, sec. 10864, N.C.L., and from the foregoing authorities and cases under similar statutes, that it is essential that, in the indictment or information, it be alleged "in what court, or before whom, the oath alleged to be false was taken," and that an indictment or information failing to so allege does not state a public offense. The information in the instant case fails to so allege in count I, and it is the offense alleged in that count of which conviction was had.

■ As to the element of the offense as stated in the statute, "that the court or the person before whom it was taken had authority to administer the same," the authorities, with practical unanimity, consider such allegation essential to a statement of a public offense. 20 Cal.Jur. 1015, supra, and the California cases cited, in footnote 11.

In 48 C.J. p. 874, it is stated: "(Sec. 121) 10. Authority to Administer Oath—a. In General. In an

indictment or information for perjury or false swearing the authority of the officer or other person to administer the oath must be set forth by proper averment; and, if this is not done, the indictment or information will be fatally defective."

In Wharton's Crim.Law, vol. 2, sec. 1554, p. 1818, is the following treatment of this question: "Sec. 1554. Detailed Authority of Court Need Not be Given. By stat. 23, Geo. II. chap. 11, it is 'sufficient to set forth * * * by what court, or before whom the oath was taken, averring such court or person or persons to have competent authority to administer the same.' By the English practice, under the statute the nature of the authority need not be specified. In the United States, there are jurisdictions in which the relaxation of the common law affected by the statute has not been accepted; and where it has been held necessary to set forth all the facts essential to constitute the authority to administer the oath. But as a general rule, the principle of the statute has been accepted among us as virtually a part of the common law, though it must appear from the indictment that the officer administering the oath was of a class authorized by law to act in such capacity. Beyond this specification need not be pushed. Thus, it has been held, that where an oath before a foreman of a grand jury is averred, this is enough without stating the foreman's name in detail. It must, however, be specifically averred that the person or court administering the oath had authority so to do."

See, also, the note, above cited, to State v. Shupe, supra, wherein, on page 496 of 85 Am.Dec. it is stated: "b. Before Competent Officer or Tribunal—It must appear from the indictment that the oath was administered by a person authorized to administer it, and if before a court or other tribunal, that such judicial tribunal had jurisdiction over the matter." (Citing many cases.)

There was a complete failure in the information in the instant case to allege that the officer before whom

the alleged oath was taken (if an officer), in the verification of the complaint (which, in the information, is alleged to have been caused, by the defendant, to be "duly verified"), had authority to administer the same.

It appears to us that the requirements above mentioned are reasonable, as minimum requirements, in alleging perjury or subornation of perjury.

A defendant may, for example, be accused of suborning A to make a false affidavit. The affidavit may be described in the information, but not fully set forth therein, and the accused may have participated in, or had some connection with, the making of numerous affidavits, before several different notaries, and he may be unable to remember before whom the particular affidavit, partially described, was verified. He should not be required to determine, by investigation and deduction, before whom the alleged oath to the particular affidavit involved was taken, in order to be able to check as to whether the officer before whom same was taken had authority to administer the oath. A defendant should be able, from the allegations of the indictment or information, to determine, with definiteness and certainty, the offense of which he is accused, in order that he may decide how he should plead, and if he pleads not guilty, he should be apprised, in the indictment or information, of facts sufficient to enable him to prepare his defense.

■ It seems only common sense to conclude that one accused of perjury, or subornation, should be informed, in the indictment or information (among other essentials) of facts sufficient to show:

1. That he took a false oath, or suborned the taking of a false oath, before a certain tribunal or person named, or sufficiently described;

2. That such tribunal or person had authority to administer the alleged oath, when it was taken;

3. That sufficient words or acts were assented to, or done, as to make clear to the consciousness of the person

taking the oath that he was assuming, and acting under, the solemn obligation to tell the truth.

■ As to the necessary allegation in the indictment or information that the oath alleged to be false was actually taken by the accused, or administered to him, it may be stated that it appears from the authorities on the question that the allegation in the information in the instant case, namely, "that the said defendant prepared and caused to be prepared and caused to be duly verified by Congetta Bogdewicz and filed a complaint in said cause and before said court," was sufficient.

■ We believe the word "verified" was appropriate to describe the act of making oath to a pleading requiring "verification." And, under our statute, a complaint in a divorce action, to have standing and to be entitled to be filed, must be "by complaint, under oath." Sec. 9460, N.C.L.Supp. 1931–1941, vol. 2.

And by the provisions of our civil practice act, secs. 8616–8620, N.C.L. 1929, vol. 4, the words "verification" and "verified" are repeatedly employed in describing the making of oath or affidavit to the various sorts of pleadings and under the varying situations described in said act. The complaint involved in the instant case, being a pleading, it was proper to allege "that the said defendant * * * caused to be duly verified" (if defendant instigated the making of the oath to it), and such allegation, we believe, was the equivalent of alleging that he caused it to be "duly sworn to," or "duly sworn." Upon that point we cite 48 C.J. 876:

"As to Form and Manner of Administration. Under the modern practice it is not necessary to allege in what particular form accused was sworn to testify, and an averment which describes an oath which is in substantial compliance with the applicable statute is sufficient. It has been held that it is sufficient to allege that accused was 'duly sworn,' was solemnly sworn, or that the oath was administered in due form of law, or that a lawful oath was administered, provided, according to some

cases, the indictment states the circumstances under which the oath was required and the occasion on which it was made, so as to show that its violation was perjury. * * *"

See, also, Wharton on Crim.Law, sec. 1553, p. 1817, wherein it is stated:

"Sec. 1553. Oath Must be Properly Set Forth. 'Duly sworn' is sufficient to describe the swearing; nor need the particular mode be set forth. Hence it is sufficient to aver that the defendant 'did then and there, in due form of law, take his corporal oath,' without stating whether he was sworn on the Gospels, or with uplifted hand. But 'sworn' (or affirmed) must be distinctly alleged, and where the procedure is special, prescribed by statute, the special oath so prescribed must be averred.

"At common law the name and office of the person or court administering the oath must be given, and a variance in this respect is fatal.

"It is, however, enough to allege swearing before a court; and proof of swearing before an officer of court, in presence of the court, will sustain an allegation of swearing before or by the court.

"An indictment charged the defendant with having sworn to tell 'the truth, the whole truth, and nothing but the truth.' The evidence was that he was sworn to tell 'the whole truth and nothing but the truth.' It was held that the variance was immaterial."

It has been hereinbefore stated that, in two essential particulars, the information failed, in count I thereof, to state facts sufficient to constitute a public offense:

1. By failing to allege the name of the officer or tribunal before whom the oath was taken;

2. By failing to allege that such officer or tribunal administering the oath had authority to administer the same.

■ The appellant did not demur to the information, but we believe that the objection to the effect that the information did not allege sufficient facts to constitute

a public offense, could be made at any stage of the proceedings in the trial court, and may be made for the first time in the appellate court. It is specifically so stated in State v. Trolson, 21 Nev. 419, 32 P. 930, 934. Other Nevada cases referring to a similar question are: State v. Hughes, 31 Nev. 270, 102 P. 562; State v. Raymond, 34 Nev. 198, 117 P. 17; State v. Kruger, 34 Nev. 302, 122 P. 483.

We cite the following authorities from Oregon and California upon the point that the objection that the indictment or information fails to state facts sufficient to constitute a public offense may be made for the first time in the appellate court, and is not waived by failing to demur: State v. Mack, 20 Or. 234, 25 P. 639; State v. Martin, 54 Or. 403, 100 P. 1106, 1107; State v. Robinson, 74 Or. 481, 145 P. 1057; State v. Jewett, 48 Or. 577, 85 P. 994, 995 (containing an approved form of indictment for subornation of perjury, under Oregon statute very similar to Nevada statute) ; People v. Ross, 103 Cal. 425, 37 P. 379, 380; Haydel v. Morton, 19 Cal. App.2d 697, 66 P.2d 204, 208; People v. Bliss, 47 Cal. App. 503, 190 P. 1046. (The cases in this paragraph were cited by appellant, in his reply brief.)

We find, and hold, that assignment of error V(b), as amplified and developed in paragraphs 1, 2, and 4 of point two, on page 13 of appellant's opening brief, has merit to the extent above indicated in this opinion, that is to say, said assignment has merit in that it assigns as error:

1. The failure to allege, in count I in the information, before whom the alleged false oath was taken;

2. The failure to allege, in count I of the information, that the officer, if any, before whom the oath, if any, was taken, had authority to administer such oath.

We find such assignment V(b) to be without merit to the extent that it claims that there is a failure to allege in count I of the information that any oath was administered to Mrs. Bogdewicz, and a failure to allege what oath is claimed to have been taken. We believe,

as before stated, that the allegation, "caused to be duly certified by Congetta Bogdewicz," is a sufficient allegation that she was duly sworn, or that an oath was duly administered to her. Our finding in this respect disposes, also, of appellant's assignmēnt of error V (d).

The appellant's particular assignments of error above mentioned, in his assignment V, were directed to the denial by the trial court of his motion for a new trial, made upon the general ground that the verdict of the jury was contrary to the evidence and contrary to the law.

We will now consider appellant's general assignment of error No. II, that "the Court erred in refusing to grant, and in denying, Defendant's Motion for a New Trial, which motion for a new trial, inter alia, was upon the ground the verdict of the jury was contrary to the evidence and contrary to the law;" also, appellant's assignment No. V (h), upon the ground that "the evidence adduced in support of Count I is insufficient to sustain the verdict of guilty."

■ As to count I, what evidence was offered upon the trial to prove before whom the oath alleged to be false was taken, his authority to administer the same, and that a sufficient oath was actually administered? It was proven from the testimony of Jesse H. Evans that he was a duly qualified notary public on November 15, 1945, the date the alleged oath is alleged to have been taken. As to the fact of whether or not Mrs. Bogdewicz appeared before Mr. Evans, and, if so, whether she actually was sworn to, or verified, the complaint, the only evidence offered by the state was the testimony of Mrs. Bogdewicz, and the certified copy of the complaint, plaintiff's (state's) exhibit A, showing the typewritten signature of Jesse H. Evans, as a notary public, to the jurat, and the typewritten word "seal." The original complaint and jurat were not shown to the witness, Jesse H. Evans, nor was his signature identified or proven by him or any other person; in fact, there was no evidence offered or admitted to show the genuineness

of the signature, purporting to be the signature of a notary public, on the jurat attached to the original complaint. We believe actual proof of the signature of the notary and of the original impress of his seal was absolutely essential in order to establish the authenticity of the jurat. The imprint, or impress, of the seal upon the original complaint was not shown to the witness, Jesse H. Evans. In order to make clear just what occurred at that point in the trial, we refer to the record (Tr. pp. 36–37) :

"Q. Do you also act as a duly authorized notary public in the County of Washoe, State of Nevada? A Correct.

"Q. Were you so engaged in November, 1945? A. Yes.

"Q. I show you plaintiff's Exhibit 'A' in evidence, which is a verified copy of the complaint filed in this Court in this county, and I will ask you to examine the notarized acknowledgment on there. A. No, that is typewritten.

"Q. A certified copy? A. Yes.

"Q. Do you recollect being the notary public on such a case on November 15, 1945? A. No.

"Q. You have no independent recollection of that? A. I have not.

"Q. Do you have any records showing that? A. No.

"Q. If your seal and signature appears on the original of that complaint in this case in this Court, you would say you did acknowledge that signature? A. Yes.

"Q. But you do not recollect this particular case? A. Not that particular case, no.

"Q. Do you know the defendant in this action Mr. Pray? A. Yes.

"Q. Does he bring people in to you on divorce cases to have you acknowledge their signatures? A. On divorce cases and deeds and various papers.

"Mr. Zahniser: You may cross-examine.

"Mr. Custer: No questions.

"The Court: That is all, Mr. Evans. You may be excused."

It is clear, from the foregoing testimony of Mr. Evans, that he had no personal recollection of Mrs. Bogdewicz making any oath, or verifying the complaint, before him, as a notary, or that she appeared before him at all. When the certified copy of the complaint was shown to him, and he was asked, by the assistant district attorney, to examine the "notarized acknowledgment," the witness called attention to the fact of the original not having been shown to him, by saying, "No, that is typewritten." The hypothetical question follows, "If your seal and signature appears on the original of that complaint in this case in this Court, you would say you did acknowledge that signature?", and the answer is, "Yes," meaning nothing as to the actual proof of the signature, or the seal. It was all conditional upon his true signature being upon the complaint, and he could not identify it, or affirm its genuineness, without its being shown to him.

Proof of the genuineness of the signature and of the seal was absolutely essential in order to make the jurat competent evidence that an oath was taken by Mrs. Bogdewicz before Mr. Evans, as a notary public; and if its authenticity had thus been established, the jurat alone could have no effect further than to serve as the basis for a prima facie presumption that a valid oath, meeting the minimum requirements of an oath, was actually administered by said notary public to Mrs. Bogdewicz.

In Wharton's Crim.Law, vol. 2, secs. 1571 and 1578, pp. 1831, 1834, the matter is clearly treated, as follows: "Sec. 1571. Oath Must be Correctly Averred and Proved. The fact that the defendant was duly sworn must be substantively proved, independently of the jurat, unless, as will be hereafter seen, the jurat is admissible as independent *prima facie* proof. * * *" (Emphasis ours.)

And sec. 1578 lays down the rule as to when the jurat is so admissible as such independent prima facie proof,

as follows: "Sec. 1578. Jurat of Officers Administering Oath May be Proof of Oath. In cases where the alleged false oath was taken before a magistrate or officer of court, then, after proof of the identity of the defendant with the person swearing to it, the certificate of such magistrate or officer, *on proof of the handwriting of his signature,* is competent and sufficient prima facie evidence of the administration of the oath at the alleged time and place to the defendant." (Emphasis ours.) Citing: Rex v. Spencer (1824) I Car. & P. (Eng.) 260 Ryan & M. 97; Com. v. Warden, 1846, 11 Met., Mass. 406.

Manifestly, there is no difference in the requirement as to proving the genuineness of the jurat by proof of the signature of the officer, whether the officer be a notary public, or a magistrate or officer of court. There is, likewise, no difference in the effect of the jurat after proof, nor as to the extent to which same, if sufficiently established, constitutes proof of the administration of the oath. In either case, the jurat, upon being duly proven, is merely prima facie evidence of the administration of the oath.

The sections above quoted from Wharton's Crim.Law are contained in chapter XXXIII, upon the subject of "Perjury."

In 48 C.J. p. 888, it is stated: "(Sec. 145) 8. Administration, Form and Making of Oath. It must, of course, be proved that an oath in some form was administered. While it is not necessary that the indictment should set forth the form of the oath, it being sufficient to allege that defendant was duly sworn, which latter allegation will permit the introduction of *evidence* as to the form of the oath, it is usually held that if the form of the oath, or the manner of administering it, is set forth, the proof must correspond, and that a material variance in these matters is fatal. * * *" (Emphasis ours.)

Some of the cases cited in support of the text are: O'Reilly v. People, 86 N.Y. 154, 40 Am.Rep. 525, and Markey v. State, 47 Fla. 38, 37 So. 53.

An able discussion of the principle involved, and the necessity for some form of oath or an unequivocal and present act, by which the affiant consciously takes upon himself the obligation of an oath, is included in the opinion in the case of O'Reilly v. People, supra. We quote certain portions of the opinion in that case:

"The evidence on behalf of the prisoner tended to prove, that on the occasion of the alleged perjury no words passed between the officer and the accused, and what was done consisted only of the latter's signature to the jurat, which he thereupon handed to the officer who affixed his own name to the certificate in silence. The force of this evidence was weakened, if not entirely destroyed, by the charge of the court. The learned judge who presided at the trial, with great care and deliberation, laid down a rule for the guidance of the jury, which is now assailed as erroneous. He stated it first in the form of an abstract proposition, and then applied it to the facts of the case on trial. In making such application he said: 'If O'Reilly delivered the bill and the affidavit to Kieley to have the same certified to by Kieley as sworn to before him, intending thereby to declare to said Kieley that by oath he intended to verify and did verify the statement subscribed by him, and the officer regarding him as so declaring on oath signs the certificate and jurat for the purpose of evidencing the verification, and then delivers it to the party in that form verified, and the party presents it in that form and shape to the board of supervisors for the purpose of procuring the audit of the bill, then I charge you that the oath has been duly and lawfully administered.' The criticism to which this proposition is subjected by the argument at the bar is in substance, that any form of an oath is rendered unnecessary, and the intention to swear is put in the place of the oath actually administered and taken. The criticism is just, precisely so far as it is true. Some form of an oath has always been required, for the double reason that only by some

unequivocal form could the sworn be distinguished from the unsworn averment, and the sanctions of religion add their solemn and binding force to the act. Pandects, XII, 2; 3 Coke's Inst. 165; 1 Phil. on Ev. 15; 1 Stark. on Ev. 23; Lord Hardwicke, in Omychund v. Barker, 1 Atk. 21; Tyler on Oaths, 15; 1 Green. on Ev., secs. 328, 371; 1 Allison's Crim.Law, 474; 3 Whart.Cr. Law, sec. 2205; 2 Arch.Cr.Pl. 1723. While these sanctions have grown elastic, and gradually accommodated themselves to differences of creed and varieties of belief, so that as the Christian is sworn upon the Gospels, and invokes the Divine help to the truth of his testimony, the Jew also may be sworn upon the Pentateuch, the Quaker solemnly affirm without invoking the anger or aid of Deity, and the Gentoo kneel before his Brahmin priest with peculiar ceremonies, yet through all changes and under all forms the religious element has not been utterly destroyed. So lately as the case of People v. Sutherland, 81 N. Y. 1, 8, the taking of an oath is described as burdening the conscience. Some form of an oath would therefore seem to be essential. It is almost as difficult to conceive of an act of swearing without any form, as of a material substance having neither shape nor locality. The changes of form incident to the growth of nations and of commerce have been serious, but have not dispensed with a form entirely. * * * A wide scope, a large liberty is thus given to the form of the oath, but some form remains essential. Something must be present to distinguish between the oath and the bare assertion. An act must be done, and clothed in such form as to characterize and evidence it.

\*      \*      \*      \*      \*      \*      \*

"To make a valid oath, for the falsity of which perjury will lie, there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act, by which the affiant consciously takes upon himself the obligation of an oath. The delivery in this case of the signed affidavit to the

officer was not such an act, and was not made so by the intention of the one party or the supposition of the other."

In Markey v. State, supra, the general subject of the necessity of proof of the actual administration of an oath, or an unequivocal act manifesting that the affiant was thereby taking upon himself the obligation of an oath, is quite exhaustively discussed. The opinion, by Mr. Justice Shackleford, also deals with the effect of the jurat, and makes clear that its effect is merely that of a prima facie presumption a sufficient oath was administered. And in the opinion the learned justice made clear that one cannot properly be convicted of a crime upon mere presumptions and estoppels. The said opinion was quoted in part in respondent's reply brief in the instant case, but certain portions thereof, which we deem important, were omitted, notably the portions dealing with the extent and effect of the presumption which arises from a jurat the signature to which has been duly proven. We quote from said opinion as follows [47 Fla. 38, 37 So. 59]:

"Generally speaking, 'conclusive presumptions and estoppels have no place in criminal law for the purpose of establishing the body of the crime charged. The defendant may prove the actual facts in dispute, notwithstanding any admission or confession he may have made to the contrary.' Abbott's Trial Brief, Criminal Causes (2d Ed.) 490. However, this doctrine of estoppel has also been applied in some criminal actions. See State v. O'Brien, 94 Tenn. 79, 28 S.W. 311, 26 L.R.A. 252; State v. Spaulding, 24 Kan. 1. We have found no case where it has been applied in any action for perjury, and we are not inclined to carry the doctrine to that extent. Was the examiner prohibited from testifying as to whether or not the defendant was actually sworn by him on the ground that his answer might contradict the jurat or certificate so signed by him, and would, therefore, be against public policy? We have found no perjury case in which it has been so held, or

where the question was raised.   On the contrary, we have found a number of authorities in which the officer was interrogated, without objection, as to whether or not the oath was administered by him.   See Case v. People, supra, [76 N.Y. 242] ; Rex v. Benson, supra; Reg. v. Barnes, 10 Cox. Crim. Cas. 539; Bishop's New Crim. Proc. sec. 933c; State v. Madigan, supra, [57 Minn. 425, 59 N.W. 490].   It has not been made to appear to us why in a perjury case, under certain circumstances, such an officer may not be interrogated, either by the state or the defendant, fully as to the facts and circumstances connected with the alleged swearing of the defendant.   * * *

"While there is force in the argument that the defendant, having obtained an order appointing an examiner to take his testimony, procured the examiner to take what purported on its face to be the testimony of the defendant, which he signed, and used as such in procuring his decree of divorce, should not be permitted to show that he was not in fact sworn, but, as we have seen, the oath being an essential element in the crime of perjury (2 McClain's Crim.Law, sec. 854), we are of the opinion that it was error to exclude testimony offered for the purpose of showing that no oath was in fact administered, and that the matters stated in the objections do not estop defendant from proving such fact.   O'Reilly v. People, supra.   The facts stated in the objections were sufficient to prove prima facie that an oath was actually administered, but the questions excluded were so framed as to admit of an answer showing the contrary, and this is sufficient without a further offer to prove that negative answers would have been given to the questions.   Buckstaff v. Russell, 151 U.S. 626, 14 S.Ct. 448, 38 L.Ed. 292.   If the defendant had admitted in his testimony upon the trial that he placed his signature to the purported testimony upon the invitation of the officer to do so if he swore to it, or that he assented by word or deed to a suggestion from the officer made at the time that he was swearing to the contents

of a written document, this would have shown a swearing within the meaning of the authorities, and the question propounded would perhaps have been improper in the form proposed; but he gave no such testimony, and neither did Smith, the examiner. If the written statement had been preceded by the declaration, 'I, George L. Markey, do hereby solemnly swear.' etc., instead of, 'George L. Markey, being duly sworn, says' we are not prepared to say that such statement signed by the defendant and authenticated by the officer in the presence of each other, would not have constituted an oath; but such is not the fact in this case. While the testimony is sufficient to show prima facie a swearing, it is not conclusive, and the court erred in excluding the question which sought to show that no oath was in fact administered. O'Reilly v. People, supra; Case v. People, 76 N.Y. 242; Carlisle v. Gunn, 68 Miss. 243, 8 So. 743."

In the Markey case, supra, there is no question as to both the affiant and the examiner, before whom the testimony was purportedly verified, having signed the same. The principal question was as to whether the presumption arising from the jurat was a conclusive presumption or merely prima facie, admitting of contradiction. It was held to be the latter, and that the court erred in excluding the question which sought to show that no oath was in fact administered.

In the instant case, neither the signature of the purported notary to the jurat, nor the seal affixed thereto, having been proven to be authentic, no presumption, either conclusive or prima facie, arose at the trial that Mrs. Bogdewicz actually appeared before Mr. Evans, or any other notary, or that she actually made oath to the complaint, or that she performed any act, in the presence of any notary, which could be deemed the equivalent to taking a formal oath. Such an act would be shown if it appeared from the evidence that the notary had stated to Mrs. Bogdewicz, "if you swear to this complaint, you may sign same," or other words

making clear to her consciousness that she was assuming the obligation of an oath, and if she thereupon signed the complaint.

As is further stated, in effect, in the Markey case, supra, it would have been proper to interrogate Mr. Evans, the defendant Pray (who became a witness in his own behalf), and/or Mrs. Bogdewicz, thoroughly, as to what actually occurred in the office of Mr. Evans, if he was the notary, upon the occasion of the alleged notarizing of the complaint. Such interrogation should have included direct questions as to the administration of the oath. This was not done. Mr. Evans did not have any recollection of being the notary who notarized the complaint on November 15, 1945. He testified he had no recollection of it, and no record showing same. Mr. Pray, the defendant, was not questioned by the district attorney concerning it, and could have been so interrogated, having, as above stated, become a witness in his own behalf. Mrs. Bogdewicz testified, among other things, "so I gave him the money and we went over to the notary public and had the copies notarized and I came back to the office and Mrs. Taggart and I left." (Tr., p. 43). So, evidently Mrs. Bogdewicz, Mr. Pray, and the notary were the persons present at Mr. Evans' office, if Mrs. Bogdewicz and Mr. Pray went there at the time mentioned, and if Mr. Evans then and there notarized the complaint. It is significant that the alleged jurat bears the date of November 15, 1945, whereas Mrs. Bogdewicz, in her testimony as to going over to the notary, refers to the afternoon of November 14th, and Mrs. Taggart, Mrs. Bogdewicz, and Mr. Pray, have all testified as to the events which, presumably, immediately preceded the notarizing, as having occurred in Mr. Pray's office on the afternoon of November 14th. Could it be that Mrs. Bogdewicz and Mr. Pray went to Mr. Evans' office on the afternoon of November 14th, did not find him in, returned to Mr. Pray's office, and that Mr. Pray returned, alone, to Mr. Evan's office, with

the complaint, on the morning of November 15th, before filing it that same morning and had it notarized in the absence of Mrs. Bogdewicz? We are not asserting that such was the case, but it could have been. The testimony shows that Mr. Pray was accustomed to having Mr. Evans notarize his (Pray's) documents and papers for him and his clients. Bearing in mind the carelessness of many notaries in performing such acts, if they are assured of the signature, by reliable persons whom they personally know, it is not incredible to believe that such may have occurred. Manifestly, if such were the method employed in having the complaint notarized, Mrs. Bogdewicz would not have actually sworn to the complaint, or ever been in personal contact with the notary. Mrs. Bogdewicz testified she signed the complaint in Mr. Pray's office, and, in answer to the very next question propounded to her by Mr. Zahniser, said she signed "this complaint under oath before a notary public as to the truth of the allegations in it."

The question and answer referred to were:

"Q. (By Mr. Zahniser): Where did you sign the complaint in that matter—where—where did you sign the complaint? A. In the office of Harry G. Pray.

"Q. Did you sign this complaint under oath before a notary public as to the truth of the allegations in it? A. Yes." (Tr. p. 39).

And she said, further on in her testimony, the following:

"* * * and I said I was sure about it, and *I signed copies* and he asked me if I had my money and I said, 'How much?', and he said, '$150.00', so I gave him the money and *we went over to the notary public and had the copies notarized* and I came back to the office and Mrs. Taggart and I left." (Emphasis ours.)

She does not state what became of Mr. Pray—why he did not return with her to his office.

Mrs. Bogdewicz contradicted herself as to where the complaint was signed. On two occasions, as the above

quotations from her testimony disclose, she said she signed it, or copies thereof, in Mr. Pray's office, and once she said she signed and made oath to the complaint before the notary. Both cannot be true. She may have had some sort of conception that if she intended that the signing should be deemed to have occurred before the notary, and the notary supposed she so intended, that would be sufficient.

If so, such was merely her conception, and had no foundation in fact or in legal effect. It was just that sort of intention and supposition which was criticized by the court upon appeal in the case of O'Reilly v. People, supra. If Mrs. Bogdewicz had such false conception that she, or the notary, had the right to resort to such a fiction as to the fact of where the signing occurred, she may have had such a false conception as to where the alleged oath should be deemed to have been administered, or as to whether any actual administration of the oath was necessary. The fact is that she swore falsely at the trial in the instant case as to where the signing occurred. There is no evidence that Mr. Pray was a notary; if so, why did they go out of his office and "over" somewhere to have the copies (as she said) notarized? There is reason to believe that she signed the complaint as she testified first (Tr. p. 39), in the office of Harry G. Pray, and as she reiterated later as to the copies (Tr. p. 43). If she was so careless of the truth as to where the complaint was signed that she allowed herself to testify falsely as to that fact (whether because of some fictional conception, or otherwise, makes no difference), is it not reasonable that she may have been equally careless, and her testimony, therefore, unreliable, when she answered, "Yes" to the question, "Did you sign this complaint *under oath before a notary public* as to the truth of the allegations in it?" (Emphasis ours.)

Upon the vital, fundamental fact of whether or not a sufficient oath was actually administered to Mrs.

Bogdewicz before a duly authorized notary public, or whether or not she performed an unequivocal act sufficient to show that she was conscious she was assuming the obligation of an oath before such notary, the proof of the affirmative of which, beyond a reasonable doubt, is absolutely essential to the establishment of the crime of perjury, the mere conclusion of Mrs. Bogdewicz, by her answer of "Yes" to the above quoted question by Mr. Zahniser, "Did you sign the complaint under oath before a notary public as to the truth of the allegations in it?", apparently was accepted by the assistant district attorney as being sufficient upon that essential element, as he questioned her no further in regard to it. Mr. Zahniser did not develop the matter further, to determine what was actually done at any notary's office as to the administration of an oath, or otherwise. He did not even ask Mrs. Bogdewicz the name of the notary, or even where she went to have the notarizing done. And this in spite of the fact that he must have realized that, in her answer to the question propounded immediately preceding the question involving whether she was under oath, she had answered in contradiction to her then present answer that she signed before a notary public.

In view of the fact that Mrs. Bogdewicz testified in the instant case that she swore falsely as to the material matter of her residence, in the divorce action, and that her statement in her divorce complaint, as to the paragraph thereof relating to her residence being in Washoe County, Nevada, was false, and in view of her contradictory testimony in the instant case as to where she made oath to the complaint, her conclusion in the above quoted answer to the effect that she made oath to the said complaint before a notary public, without identifying him, or stating where same occurred, or who was then present, or any surrounding facts or circumstances, would be entitled to little, if any, weight, even were Mrs. Bogdewicz not an accomplice of the appellant. While, under the law, we are not required to weigh the evidence, it is our duty, when error is assigned upon the

ground that the verdict was contrary to the evidence, and that a motion for a new trial was erroneously denied, to determine whether or not there is any substantial evidence to sustain the verdict of the jury and the judgment rendered thereon, and we do not deem the evidence of Mrs. Bogdewicz, as to the element of perjury involved in the crime charged, to be substantial. Falsus in Uno, falsus in Omnibus.

But if the crime alleged in the information occurred, Mrs. Bogdewicz and the appellant, under the proper interpretation of the law, would clearly be accomplices of each other, as to perjury. The perjury of Mrs. Bogdewicz is an essential element of the crime of subornation of perjury, of which the appellant has been charged and convicted, and it is our view, which we believe is supported by the great weight of authority, that the accomplice rule applies in the instant case, to preclude the conviction of the appellant upon the uncorroborated testimony of Mrs. Bogdewicz as to the essential fact of whether or not she was actually sworn to the said complaint. Our statute prohibiting conviction of a crime upon the uncorroborated testimony of an accomplice is section 10978, N.C.L.1929, vol. 5, and is as follows: "Sec. 10978. Conviction on Testimony of Accomplice—Corroboration. § 330. A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof."

Nevada cases dealing with the subject, generally, are: State v. Williams, 35 Nev. 276, 129 P. 317; State v. Carey, 34 Nev. 309, 122 P. 868; State v. Douglas, 26 Nev. 196, 65 P. 802, 99 Am.St.Rep. 688.

The doctrine, which we believe to be supported by the weight of authority, and which we have above indicated we shall follow in the instant case is clearly stated

in State v. Renswick, 85 Minn. 19, 88 N.W. 22, 23, as follows: "The completed crime of subornation of perjury consists of two essential elements—the commission of perjury by the person suborned, and the willfully procuring or inducing him to so do by the suborner. Gen.St.1894, sec. 6379. As to the first element of the crime, the suborned and the suborner are principals by virtue of the statute (Id. sec. 6310), and necessarily each is the accomplice of the other; hence this element of the crime cannot be established by the uncorroborated evidence of the suborned (Id. sec. 5767). But as to the second element of the crime, the suborned is neither a principal nor an accomplice, for legally he cannot be guilty of persuading himself to commit perjury. An indictment of a party for inducing himself to commit a crime would be a legal absurdity. State v. Pearce, 56 Minn. [226,] 231, 57 N.W. 652, 1065; State v. Sargent, 71 Minn. [28] 31, 73 N.W. 626; State v. Durnam, 73 Minn. 150, 75 N.W. 1127. The conclusion logically follows that if, in the prosecution of a party for subornation of perjury, it is sought to establish the fact that perjury was committed by the testimony of the person committing it, his testimony must be corroborated as to such fact, because as to the perjury he is an accomplice. But the alleged fact that he was induced to commit the crime by the accused may be established by his uncorroborated testimony if it satisfies the jury beyond a reasonable doubt."

See, also: State v. Smith, 153 Minn. 167, 190 N.W. 48; Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; Cohen v. United States, 2 Cir., 27 F.2d 713.

Under our statute (as in Minnesota and many other states), section 9958, N.C.L. 1929, vol. 5, "every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such."

It is clear, therefore, that in the instant case, the appellant, if he suborned Mrs. Bogdewicz, as she testified he did, was, by force of the statute, a principal as to the perjury itself, involved as an element in the crime of subornation.

It follows that the appellant could not properly be convicted of the crime of subornation of perjury upon the testimony of Mrs. Bogdewicz, uncorroborated as it was, as to the element of perjury, and particularly as to the essential fact of whether or not an oath was actually administered to her, in verification of the complaint, by a court or officer duly authorized to administer an oath. This would be true if her evidence was otherwise reliable and worthy of belief, and if, as has been stated, her testimony amounted to more than a conclusion.

There is sound reason for the rule, adopted by statute in most of the states, prohibiting conviction upon the uncorroborated testimony of an accomplice, particularly in perjury and subornation of perjury cases. A confessed perjurer's testimony is unreliable at best, and when selfish interest may be materially served by becoming a witness against an accomplice, as is often true, the temptation is strong, and to one shown not to have had, in the recent past, proper regard for the truth, the resistance because of character is probably weak. Hence, the rule as to accomplices' testimony, which we believe to be in the interest of justice and truth in the administration of criminal law.

We do not find it necessary to pass upon appellant's assignment of error VI, which is as follows:

"Assignment No. VI

"The trial court, having refused to give defendant's requested Instruction No.—— as to the Statute requiring the testimony of an accomplice to be corroborated, should then of its own motion have given an Instruction to the jury embodying the Statute upon that subject."

Whether the trial court should have given the requested instruction, or, if same was not sufficient, of

its own motion have given an instruction as to the testimony of accomplices, under the statute, is not now important, for the reason that we are, by our holding, according the appellant the full benefit of the rule for which he contends, and more could not be accorded him should we find the said assignment had merit.

We believe that, under the law, the appellant was entitled to an acquittal at the trial upon the conclusion of the evidence, and that appellant's requested instruction advising the jury to acquit the defendant because of the insufficiency of the evidence should have been given, and that appellant's assignment of error No. VII is, therefore, well taken. In our judgment, the prosecution failed to establish a prima facie case, justifying submission to the jury for the reasons and because of the deficiencies in the state's case, hereinbefore fully set forth. The insufficiencies in the state's case may be summarized as follows:

1. The facts alleged in the information were not sufficient to constitute a public offense, the particulars in which there was such insufficiency having been fully set forth herein. See 24 C.J.S., Criminal Law, sec. 1948, p. 1101, and the cases there cited, to the effect that such an error is not merely technical, but does affect the substantial rights of the accused.

2. There was a failure to prove, by competent evidence, sufficient in itself, or, in the case of the testimony of an accomplice, sufficiently corroborated, any administration of an oath to Mrs. Bogdewicz in the verification of the complaint (a certified copy only being in evidence—plaintiff's exhibit A), by any court or any officer authorized to administer an oath, or at all.

Mrs. Bogdewicz having been shown to be an accomplice of the appellant as to the perjury itself, if same was committed, her evidence, if otherwise sufficient (and it was not), was rendered insufficient, because she was such accomplice, as to the essential fact of the administration of the oath, for the reason that her testimony was not corroborated by any other competent evidence.

There must have been an oath administered verifying the complaint before there could be any violation of that oath, or before any perjury or subornation of perjury could arise or be predicated upon such violation. And there can be no valid conviction of subornation of perjury unless the perjury, which is an essential and fundamental element of the crime of subornation, is proven by competent evidence sufficient to establish the guilt of the defendant beyond a reasonable doubt

If the appellant was entitled to an acquittal at the close of the state's case, or at the close of the evidence of both the state and the defendant, at the trial, and we believe that he was so entitled, then it was reversible error for the trial court to fail to so advise the jury, when so requested by the appellant's attorney; and if the appellant was entitled to an acquittal at that time, he is clearly entitled to an acquittal now.

We are clearly of the opinion that the duty devolves upon us at this time to reverse the judgment and to render such judgment as we believe the district court should have rendered if that court had advised the jury to acquit the appellant, and the jury had followed such advice. 24 C.J.S., Criminal Law, sec. 1950, p. 1115.

In our judgment, it is not necessary for us to consider further, or to decide as to, the numerous other assignments of error presented by the appellant, as the assignments which have been decided herein, and our holdings relative thereto, as hereinabove set forth, are decisive of the instant case.

The decision and judgment of this court is that the judgment of the district court, convicting appellant of the crime of subornation of perjury, be, and the same is, hereby reversed, and the case is remanded to the said district court, and that court is hereby directed that, if the appellant is in custody he be discharged, or if he is admitted to bail that his bail be exonerated, or if money has been deposited instead of bail, that it be refunded to the appellant; and the district court is

further directed to make such order, or orders, in accordance herewith as are requisite, necessary or appropriate in the premises.

EATHER, C. J., concurs.

TABER, J., participated in the hearing of the oral argument in this case, but died before the opinion was prepared.

BADT, J., did not participate.