## The State of Indiana *v.* Gross.

[No. 21,761.   Filed May 23, 1911.]

1. Perjury.—*Courts.—Mayor.—Evidence.—Variance.*—In a prosecution for perjury in which the affidavit charges the alleged offense to have been committed before the duly elected, qualified and acting judge of the city court of Huntington, and that defendant was sworn by such judge, evidence showing that the trial at which the alleged offense occurred was before the mayor of Huntington, acting as city judge, and that defendant was sworn by such mayor, constitutes a fatal variance from the affidavit.   pp. 598, 600.

2. Evidence.—*Judicial Notice.—Huntington.—Class of.—City Court.*—Courts take judicial notice that in 1910 the city of Huntington was a city of the fifth class within §8840 Burns 1908, Acts 1905 p. 219, §215, and that under §8644 Burns 1908, Acts 1905 p. 219, §43, the duties of the city judge of a city of the fifth class devolved upon the mayor of the city.   p. 599.

3. Perjury.—*Indictment.—Essentials.*—An affidavit for perjury must set forth a correct legal description of the court or tribunal before whom the perjury is alleged to have been committed, as well as a correct description of the officer who administered the oath, and the proof must support such allegations.   p. 600.

From Wabash Circuit Court; *A. H. Plummer,* Judge.

Prosecution by The State of Indiana against Otto Gross. From a judgment for defendant, the State appeals. *Appeal not sustained.*

*James Bingham*, Attorney-General, *A. G. Cavins*, *E. M. White*, *William H. Thompson* and *Frank G. Carpenter*, for the State.

*D. F. Brooks*, *C. W. Watkins* and *Charles A. Butler*, for appellee.

JORDAN, C. J.—This prosecution was originally instituted in the Huntington Circuit Court, on an affidavit purporting to charge appellee with the crime of perjury, committed by falsely testifying at the trial of a certain cause in the city court of Huntington. The defendant's plea was "Not guilty." The case was venued to the Wabash Circuit Court, wherein it was tried by a jury. At the conclusion of the State's evidence, the court, on the motion of the defendant, directed the jury to return a verdict in favor of the accused, which it did, and thereupon a judgment was rendered discharging defendant. The State appeals.

The affidavit upon which the case was tried alleges that an action was brought in the city court of Huntington, Indiana, wherein Eugene Redlinger was defendant and

1. The State of Indiana was plaintiff; that on January 31, 1910, said cause came on for trial and hearing before the Honorable Milo Feightner, the duly elected, qualified and acting judge of said city court, sitting as such judge, and that then and there said Otto Gross presented himself as a witness; that said Gross was duly sworn by said judge, who had authority then and there to administer said oath, to give true evidence in said cause, whereupon said Gross did then and there, on his oath as aforesaid taken, feloniously, wilfully, etc.

The State at the trial introduced Milo Feightner, who testified that on January 31, 1910, he was the duly elected and qualified mayor of the city of Huntington, Huntington

county, Indiana, and that he had been the mayor of that city since January 1, 1910; that on January 31, 1910, he sat as judge in the case of The State of Indiana v. Eugene Redlinger, on a charge of making an illegal sale of intoxicating liquor. He testified that he never had been elected city judge of the city of Huntington, and further stated that he acted as judge at the trial of said cause because he was the mayor of the city of Huntington.

The lower court held that there was a fatal variance between the proof established by this evidence and the allegations in the affidavit, and directed an acquittal of the defendant, on account of such variance. By §215 of the cities and towns statute of 1905 (Acts 1905 p. 219, §8840 Burns 1908) it is declared that "the judicial power of every city of the first, second, third and fourth classes, shall be vested in a city court. The officers thereof shall be a judge, a clerk and a bailiff. * * * Such court shall be a court of record, and all its judgments, decrees, orders and proceedings, shall have the same force and effect as those of the circuit court. * * * Provided, that in cities of the fifth class the mayor shall exercise all the powers and be required to perform all the duties herein provided for city judges, in so far as the same are applicable."

Section 8644 Burns 1908, Acts 1905 p. 219, §43, provides that "the elective officers of the cities of this State shall consist of a mayor, a city judge, a city clerk, a city treasurer, and councilmen as hereinafter provided, * * * and second, that, in cities of the fifth class, the powers and duties of city judge shall devolve wholly upon the mayor."

We judicially know that the city of Huntington, according to the United States census, has a population of fewer than ten thousand, and, under the classification made by the act of 1905, *supra*, and the act of 1909 (Acts 1909 p. 13), is a city of the fifth class, and therefore is not authorized to elect a judge of a city court. The duties and powers of such judge, as shown by the provisions of said act of 1905, devolve

upon, and are to be performed by the mayor of that city.

In the affidavit there is no allegation whatever to show that Milo Feightner was the mayor of Huntington at the time of the trial of the cause in which the alleged

1.  crime was committed, or at the time he administered the oath to defendant. There is no showing in the affidavit that he, as the mayor of Huntington, acted in the capacity of city judge and exercised the powers of such official in the trial in question. The affidavit described Feightner as the duly elected and qualified judge of the city court of Huntington, but the proof upon the trial does not conform to or satisfy this description. On the contrary, the proof shows that Feightner was not at the time of the trial in question a *de jure* or a *de facto* judge of the city court of Huntington, for under the law that city neither had nor was entitled to have what is denominated under the statute "a city judge." The proof shows that Feightner was the mayor of the city, and acted under the law as judge, in holding the city or mayor's court, by reason of the fact that he was mayor of that city.

The rule is well settled that correct descriptions of the court before which the perjury is alleged to have been committed, and of the officer who administered the

3.  oath to the accused, are material and a matter of substance, and must be correctly set out in the affidavit or indictment in the particular case. The defendant in a perjury case has a right to be correctly informed by the indictment in respect to the officer before whom he took the oath alleged to have been false. *Kerr* v. *People* (1866), 42 Ill. 307.

It follows that a description of the court and of the person administering the oath must be substantially proved on the trial as laid or alleged by the State in its plead-

1.  ing. Or, in other words, the proof must substantially satisfy such description as alleged in the indict-

ment or affidavit, otherwise there will be a fatal variance between the pleading and the proof in the case. *Stewart* v. *State* (1879), 6 Tex. App. 184, and authorities cited; *State* v. *Street* (1807), 5 N. C. 156, 3 Am. Dec. 682; 2 Bishop, Crim. Proc. (3d ed.) §910; 2 Wharton, Crim. Law (10th ed.) §1290; *Guston* v. *People* (1871), 61 Barb. 35.

Mr. Bishop in the section of his work on criminal procedure just cited states that "the name of the court, or of the official person, before which or whom was the proceeding wherein the perjury is charged to have been committed * * * is one of the identifying facts; hence it must be alleged, and correctly, as known in law."

In the case of *State* v. *Street, supra,* it was held that in an indictment for perjury the court before which the perjury is alleged to have been committed must be legally set forth. In that case the court was described in the indictment as "a certain superior court begun and holden for the district of Hillsborough," but in the statute the court was denominated and known as the "Courts of Pleas and Quarter Sessions." The variance between the description of the court and the proof in that case was held to be fatal.

In the case of *Stewart* v. *State, supra,* the official character of the person before whom the oath assigned as perjury was taken was described in the indictment as "T. O. Hynes, then and there being and acting as one of the coroners of said county of Washington, and said state," and "that said Harrison Stewart was duly sworn before said T. O. Hynes, coroner as aforesaid, as a witness before said coroner and said jury of inquest." The court in that case said: "Nowhere in the indictment is the officer before whom the oath was taken characterized otherwise than as coroner. Under our law as it now exists, and, indeed, since the adoption of the constitution of 1869, no such office, separate, distinct, and specific, as that of coroner *eo nomine* has been or is known to our system. * * * In the present constitution there is no mention made of such an officer.

We find, however, in the General Laws of the Fifteenth Legislature, p. 165, Sect. 28, that 'justices of the peace shall be commissioned by the governor to act as justices of the peace in their respective precincts. * * * They shall also discharge all the duties of coroner, except such as devolve upon constables,. by section twenty-one of the constitution.' * * * The allegation in the indictment, to have been sufficient, should have alleged substantially that T. O. Hynes was a justice of the peace of Washington county, and that, at the time he administered the oath to defendant which is assigned as perjury, he, as said justice of the peace, was acting in the discharge of the duties of a coroner in said county."

In 2 Wharton, Crim. Law (10th ed.) §1290, the author, in dealing with the offense of perjury, says: "The title of the court must be correctly given; and if a quorum is essential to jurisdiction, it is proper to aver that a due quorum of the judges was present."

In the case of *Guston* v. *People, supra,* the indictment on which the accused was convicted of perjury was held to be faulty in matters of substance, because it charged that the action in which the perjury was charged to have been committed was pending in the supreme court of the city of New York, and that the referee who administered the oath was appointed by the supreme court of the city and county of New York. The court there said: "There are no such courts known to the law; certainly none so designated, of which judicial notice can be taken, as having jurisdiction of an action for divorce."

By §9448 Burns 1908, §5888 R. S. 1881, in case of the absence of the coroner, or his inability to attend an inquest, any justice of the peace of the county is empowered to exercise the power of the coroner by holding an inquest over a dead body, and in so doing the justice is authorized to proceed in all respects as coroner. To illustrate, it may be said that if the State were to institute a prosecution against

a witness who had testified falsely at an inquest held by a justice of the peace acting as coroner, such justice having also administered the oath to the accused party, it would not answer for the State to charge in the indictment that the crime was committed by the defendant in giving false testimony at an inquest held by the coroner of the county, and that the oath had been administered to the witness by such coroner, for when upon the trial the proof disclosed that the inquest was not held by the coroner, but by a justice of the peace acting as coroner, and which justice also administered the oath upon which the perjury was assigned, necessarily a material variance would arise between the proof and the charge as presented by the indictment.

Under the facts in this case we conclude that for the reasons herein given there was a fatal variance between the material allegations in the affidavit and the proof upon the trial. The lower court therefore did not err in directing a verdict in favor of appellee. It follows that the appeal of the State is not sustained.