MADISON *v.* STATE OF INDIANA.

[No. 29,188.   Filed November 4, 1955.]

520

*Wilbur F. Dassel, Robert J. Hayes* (of counsel), both of Evansville, and *Raymond Pace Alexander* (of counsel), of Philadelphia, Pennsylvania, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Deputy Attorney General, for appellee.

EMMERT, C. J.—This is an appeal from a judgment sentencing appellant to imprisonment for life, entered on a verdict finding him guilty of murder in the second degree under an indictment charging murder in the first degree. The assignment of errors charges the trial court erred (1) in overruling appellant's motion to quash the indictment, and (2) in overruling appellant's motion for a new trial. The motion for a new trial, among other things, alleged the verdict was not sustained by sufficient evidence, and was contrary to law.

The indictment was returned by the Grand Jury of Vanderburgh County on October 2, 1953, and is as follows:

"The Grand Jurors for the County of Vanderburgh and State of Indiana, upon their Oaths, present and charge that JAMES B. MADISON on or about the 1st day of August A.D., 1953 at said County unlawfully, feloniously, purposely and with premeditated malice, did kill and murder one Jesse Clarence Trigg by then and there unlawfully, feloniously, purposely and with premeditated malice wounding the said Jesse Clarence Trigg with a certain deadly weapon called a hand grenade, *then and there loaded with nitroglycerin,* the said hand grenade being thrown by the said James B. Madison in the direction and in the vicinity of the said Jesse Clarence Trigg, after the trigger mechanism on said hand grenade had been released by the said James B. Madison and the said hand grenade thereby exploding, fragments of said exploded hand grenade being thrown by said explosion at and against the said Jesse Clarence Trigg, thereby inflicting a mortal wound on the said Jesse Clarence

Trigg of which mortal wound the said Jesse Clarence Trigg then and there died. . . ." (Italics supplied.)

The motion to quash charged (1) the facts stated in said indictment did not constitute a public offense, and (2) said indictment does not state the offense charged with sufficient certainty.

It is well settled that an offense need not be charged in the exact language of the statute. *Wilson* v. *State* (1953), 232 Ind. 495, 498, 112 N. E. 2d 449. Words which import the same meaning will be sufficient. *Peltz* v. *State* (1953), 232 Ind. 518, 522, 112 N. E. 2d 853. The language was not uncertain or ambiguous and every fact necessary to constitute the crime of murder in the first degree, as defined by §10-3401, Burns' 1942 Replacement, was directly and positively alleged. There was no merit in the motion to quash or the motion in arrest of judgment. Each was properly overruled.

The state's contention is frivolous that appellant's original bill of exceptions No. 1 and his special bill of exceptions No. 2 are not properly in the record. It is sufficient to note that Rule 2-3 was fully satisfied, and both bills are properly in the record.

The appellant did not take the witness stand in his own behalf, nor did he introduce any evidence in defense of the charge. The State introduced the confession of the appellant and produced a number of witnesses, some of whom were soldiers who had been stationed at Camp Breckinridge. Some of the evidence is conflicting, as would be inevitable when the homicide grew out of a free for all fight involving from 50 to 100 men and women, but the general picture appears too plain to be ignored.

Appellant was a Negro paratrooper, nicknamed "Trooper" or "Big Trooper," just returned from the

Korean War, and stationed at Camp Breckenridge. The evening of July 31, 1953, he and other soldiers went to Evansville. He visited various drinking places including one where gambling was openly conducted, and about 2:00 A.M., August 1st, he arrived at Ted Cole's Barbecue, which was operated as a dance hall, barbecue and an after hours liquor rendezvous. Appellant bought a ticket to the dance floor and danced for about fifteen minutes, went outside, bought a barbecue sandwich, which he sat down to eat. A fight had started in the dance hall and moved to the outside. It was a free swinging, free for all, drunken brawl, with about everybody involved using fists, knives and clubs. One Amazon was stabbing with a coke bottle with a broken neck. Somebody knocked the sandwich out of appellant's hand as he was eating it. Appellant attempted to act as a peacemaker, and as often happens, his peaceful efforts only brought further trouble upon himself. One of his soldier friends, Eddie Wright, under the influence of liquor, was trying to fight, while appellant was trying to get him away in a car. Appellant hit him three times in order to quiet him and had knocked Eddie down, and as he bent over to pick him up and take him to a car someone hit the appellant over the back with a long board, generally described as a 2 by 4 or larger, which was broken by the force of the blow.

Another soldier by the name of Boxx had an Oldsmobile which had some hand grenades in the trunk. Appellant obtained one, and pulled the safety pin with his teeth. This held the crowd back. Boxx backed out towards State Road 41 and started to drive away. Some of the crowd shouted, "there they go in the green Oldsmobile, shoot at the Oldsmobile." Appellant put his hand out of the car and dropped or threw the hand grenade, which alighted at the feet of one Frank Couch, an ex-convict who had been selling tickets at

the dance floor early that evening. Couch kicked the grenade, and it exploded near Jesse Clarence Trigg, killing him as he held an open knife in his hand. Appellant was arrested later that morning in Evansville.

Appellant challenged the array of the regular panel of the petit jury of the Vanderburgh Circuit Court, alleging that one of the jury commissioners, Harry Fitzgerald, had not resigned when his successor, Henry Brink, was appointed "to act for the time being" as jury commissioner. However, it developed on the hearing on the challenge that the commissioner Fitzgerald was away on a vacation and became ill and was in the hospital two days before his successor was appointed. Section 4-3303, Burns' 1946 Replacement, provides for the appointment of a jury commissioner "to act for the time being" if a jury commissioner fails "to act when required or because of illness or for any other cause" he should be "unable to act." The jury commissioner was duly sworn, but the record fails to show he was instructed concerning his legal duties. The jury commissioner in our opinion was a *de jure* jury commissioner, and the presumption on collateral attack is the court did its duty unless the record shows to the contrary. There is no suggestion that any members of the regular panel were not chosen pursuant to law or that fraud or corruption entered into their selection in any manner. The situation is entirely different from that disclosed in *Rudd* v. *State* (1952), 231 Ind. 105, 107 N. E. 2d 168. The challenge to the array was properly overruled.

"Malice may be presumed from the intentional use of a deadly weapon in such a manner as is likely to cause death. *Stice* v. *State* (1950), 228 Ind. 144, 89 N. E. 2d 915; *Mosier* v. *State* (1942), 219 Ind. 669, 40 N. E. 2d 698; *Perkins* v. *State* (1934), 207 Ind. 119, 191 N. E. 136; Ewbank's Indiana

Criminal Law (2d Ed.) §889, p. 672, and authorities cited therein." *Myles* v. *State* (1955), 234 Ind. 129, 124 N. E. 2d 205. The jury had the right to find that when the grenade was thrown or dropped appellant had the felonious intent to injure or to kill any member of the crowd within its potential range. *Noelke* v. *State* (1938), 214 Ind. 427, 431, 15 N. E. 2d 950; *Lloyd* v. *State* (1934), 206 Ind. 359, 189 N. E. 406; *Brown* v. *State* (1897), 147 Ind. 28, 46 N. E. 34. The fact that Couch kicked the grenade did not break the line of causation. *Scott* v. *Shepherd* (1773), 3 Wils. K. B. 403, 95 Eng. Reports (Full Reprint) 525. (Squibb Case.) There was no variance in the proof as to malice and intent.

Appellant insists the court erred in giving its instruction No. 10, which is as follows:

> "Where there is a doubt existing as to which of two or more degrees of an offense the defendant may be guilty, he must be convicted of the lower degree only."

In compliance with Rule 1-7, appellant made specific objections to the giving of this instruction on the grounds that there was an inference arising from the instruction that he was guilty of some offense, that it did not state the various degrees of included offenses in the indictment, and that if there was a reasonable doubt that he was guilty of manslaughter, he should be found not guilty, and that it made no provision for a finding of not guilty.

It should be noted that the instruction did not cover all of §9-1806, Burns' 1942 Replacement, which is as follows:

> "A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted. When there is a reasonable

doubt in which of two [2] or more degrees of an offense he is guilty, he must be convicted of the lowest degree only."[1]

Instruction No. 10 was complete within itself, and certainly left the inference that he might be convicted of an included offense without having been proved guilty thereof beyond a reasonable doubt. This inference was not discussed in *Newport* v. *State* (1895), 140 Ind. 299, 302, 39 N. E. 926[2] The instruction contains the clause "he *must be convicted* of the lower degree only." It is therefore mandatory in character and must contain all the elements necessary for conviction. The instruction omits the most necessary element—that the defendant was in fact guilty of an offense charged. Failing to do so, the instruction is fatally defective.

Since the decision in *Beneks* v. *State* (1935), 208 Ind. 317, 196 N. E. 73, this court has followed the rule that an erroneous instruction is not cured by other instructions which may correctly state the principles involved. There, this court speaking by Chief Justice Fansler, said:

"It is error to give an instruction which incorrectly states the law. Definitions fixing a high standard in one case and a lower standard in another are not conducive to equal justice. Cases

1. Section 9-1816, Burns' 1942 Replacement, clearly contemplates the jury should be instructed that the defendant may be found not guilty of all the offenses charged. "Upon an indictment or affidavit for an offense consisting of different degrees, *the jury may find the defendant not guilty of the degree charged* in the indictment or affidavit, and guilty of any degree inferior thereto or of an attempt to commit the offense." (Italics added.) The next section states: "In all other cases, the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment or affidavit." Section 9-1817, Burns' 1942 Replacement.

2. *Coolman* v. *State* (1904), 163 Ind. 503, 72 N. E. 568, is not a precedent to sustain the trial court's action, for instruction No. 5 in this case was tendered by the defendant, and embodied a statement concerning the law on reasonable doubt.

cannot be affirmed in the face of admittedly erroneous instructions, which, if correctly understood by the jury, permit conviction upon evidence of lesser weight than contemplated by law, since it cannot be said that a correct instruction would not have resulted in a different verdict. Justice requires that the guilt of all defendants shall be determined by the same standard. It is true that the statute provides that, 'in consideration of the questions which are presented upon an appeal, the court shall not regard technical errors or defects, or exceptions to any decision or action of the trial court, which did not, in the opinion of the court to which the appeal is taken, prejudice the substantial rights of the defendant.' Section 2394, Burns 1926, §9-2320, Burns 1933, §2384, Baldwin's 1934. This statute must be construed as having preference only to matters of practice and procedure, and to questions which do not go to the merits of the case. It was not intended to authorize this court to weigh the evidence and determine therefrom whether the jury would have reached the same verdict under proper instruction. A defendant is entitled to have the jury correctly instructed concerning the law. Any expression in the decisions which would seem to indicate that this court will consider the evidence in determining whether an erroneous instruction, involving the merits of the case, prejudiced the substantial rights of the defendant must be disregarded." (Pages 328, 329.)

This rule has been consistently followed since the Beneks Case. *O'Neil* v. *State* (1939), 216 Ind. 21, 22 N. E. 2d 825; *Brannin* v. *State* (1943), 221 Ind. 123, 46 N. E. 2d 599; *Steinbarger* v. *State* (1948), 226 Ind. 598, 82 N. E. 2d 519; *Todd* v. *State* (1951), 229 Ind. 664, 101 N. E. 2d 45; *Johnston* v. *State* (1952), 230 Ind. 571, 575, 105 N. E. 2d 820.

We fail to find any error in the giving of other instructions discussed in appellant's original brief.

Appellant contends that there is a fatal variance between the allegation of the indictment concerning the

manner and means used to kill the decedent, and the proof. The indictment charged that appellant purposely and with premeditated malice did kill and murder Trigg "by then and there unlawfully, feloniously, purposely and with premeditated malice wounding the said Jesse Clarence Trigg with a certain deadly weapon called a hand grenade, then and there loaded with nitroglycerin, the said hand grenade being thrown by the said James B. Madison . . . ."

Lieutenant Donald I. Reed of Camp Breckenridge testified that the hand grenade contained one-fourth pound of granulated TNT and that "TNT stand for tri nitro troluene, which is a nitrating process similar to nitroglycerine. Both are derived from nitro process, both are highly explosives. TNT is a treating of troluene with nitroglycerine."

We take judicial notice of the nature and characteristics of common explosives. *Jamieson* v. *Indiana Natural Gas & Oil Co.* (1891), 128 Ind. 555, 28 N. E. 76, 12 L. R. A. 652; 1 Jones, Evidence (2d Ed.), §455, p. 809. Nitroglycerine is made by treating glycerol with nitric and sulphuric acids. It explodes by percussion or heating in a closed vessel, and produces ten thousand times its own volume of gas. It is eight times as powerful as gunpowder weight for weight or thirteen times volume for volume. Webster's New International Dictionary (2d Ed.). "Nitroglycerine is very sensitive to shock, and its sensitivity is greater if it is warm." Vol. II, Dr. Tenney L. Davis, The Chemistry of Powder and Explosives (1943), p. 209. "Trinitrotoluene, commonly known as T. N. T. is obtained by the nitration of toluene by a mixture of sulfuric and nitric acids." Vol. 1, G. D. Clift and Dr. B. T. Fedoroff, A Manual for Explosives Laboratories (1942), Ch. V, p. 1. See also Vol. 1, Davis, The Chemistry of Powder and Ex-

plosives (1941), p. 141, *et seq.* There is no nitroglycerine in TNT, the only similarity being that the manufacture of each requires a nitrating process. The power generated by the explosion of nitroglycerine is approximately twice that generated by the explosion of an equal amount of TNT. Clift and Fedoroff, A Manual for Explosives Laboratories (1941), Ch. XI, p. 17. Nitroglycerine is so dangerous to handle it would have been impossible to have used nitroglycerine in an Army hand grenade. A very small amount will blow the strongest of safes, and it is popularly regarded as the most dangerous and powerful explosive for special use, exceeded only by an A-bomb or an H-bomb. The very fact that the term was used in the indictment was calculated to and did prejudice the appellant in his defense. The false testimony of the so-called Army expert was intended to prejudice the jury against the accused and create in their minds the opinion that he was a reckless and dangerous person to be at large.

"The Bill of Rights in our Constitution gives the accused the right 'to demand the nature and cause of the accusation against him, and to have a copy thereof.' [Section 13, Art. I, Ind. Const.] This provision of our Bill of Rights arises from the English charters of liberty and from judicial decisions in England prior to the adoption of our Constitution, and the language used in the Bill of Rights had a meaning that had then been defined by the courts of England, and one phase of it was, that as to each material allegation the accused might be sufficiently informed to prepare his defense. It would be idle to have such a provision and then permit the state to misdescribe the place of a material occurrence, or to fail to describe the place with reasonable certainty." Townsend, J., in *Brockway* v. *State* (1923), 192 Ind. 656, 657, 138 N. E. 88, 26 A. L. R. 1338. This constitutional right was violated by Chap-

ter 62 of the 1915 Acts, §2-1005, Burns' 1946 Replacement, which purported to permit the pleading of conclusions and participial expressions in criminal cases, which might then be subject to a motion to make more specific, so the act has been limited to civil pleadings. *Hinshaw* v. *State* (1919), 188 Ind. 147, 153, 154, 122 N. E. 418; *Bowen* v. *State* (1920), 189 Ind. 644, 128 N. E. 926.

"The legislature has not the power to dispense with such allegations in an indictment, etc., as are essential to reasonable particularity and certainty in the description of the offense." *McLaughlin* v. *State* (1873), 45 Ind. 338, 347.[3] See also *Riley* v. *State* (1907), 168 Ind. 657, 660, 81 N. E. 726; *Kimmel* v. *State* (1926), 198 Ind. 444, 154 N. E. 16.

The constitutional right to be prosecuted of record on a specific charge is intended to give warning to an accused of the evidence that may be introduced against him so that he may be in a position to defend against it. "The defendant has a right to require that any crime alleged against him must be charged with sufficient certainty as will enable him to distinguish it from any other violations of the same statute, and to know that he is charged, not only with a public offense, but also such particulars in relation thereto as will put it in his power to anticipate the proof which shall be adduced

---

3. "Under the Bill of Rights, appellant was entitled to know the character of the charge against him. In this case, two specific acts, made unlawful by specific statutes, were charged as the unlawful acts, responsible for the death, in two separate counts. Proof that other or different unlawful acts were responsible for the death will not sustain the charge, notwithstanding they may be similar to the unlawful acts charged." *Shelton* v. *State* (1936), 209 Ind. 534, 539, 199 N. E. 148.

"This general rule, in criminal pleading, requiring the material facts constituting the offense to be postively alleged, is nothing more or less than a constitutional right of the accused 'to demand the nature and cause of the accusation against him, and to have a copy thereof.'" *Gavalis* v. *State* (1922), 192 Ind. 42, 45, 135 N. E. 147.

against him, and prepare to meet it." *Mayhew* v. *State* (1920), 189 Ind. 545, 553, 128 N. E. 599.

It is error for any court to reason that a charge of crime need only be sufficiently definite to protect the accused from double jeopardy. The state may prosecute X for reckless homicide in the killing of Y by an affidavit which charges merely negligence with no proximate cause. If the trial court should erroneously overrule a proper motion to quash, and the jury acquit X, he would still be protected from double jeopardy although by all the Indiana cases the affidavit did not state a public offense. All crimes are provided by statute in Indiana, and a failure to charge an essential and material allegation of the statutory offense constitutes a failure to charge an offense, and the attachment of jeopardy on such a charge is not the acid test for determining the sufficiency of the charge.

The constitutional rights to protect the life and liberty of an accused were to protect the innocent under the Anglo-Saxon concept of justice as expressed by Blackstone that "the law holds it better that ten guilty persons escape, than that one innocent party suffer." (Blackstone, Commentaries on The Law (Gavit's Ed.), p. 909.) But we do not have one kind of a constitution for the innocent, and another for the guilty. "Our law is no respecter of persons. The rights of just and upright citizens are not more sacred in the eyes of the law than the rights of the poorest and meanest citizens of the state. The safeguards erected by the Constitution are intended to protect the rights of all citizens alike. They protect the rights of the guilty as well as those of the innocent." Lairy, J., in *Batchelor* v. *State* (1920), 189 Ind. 69, 84, 125 N. E. 773.

"A variance is an essential difference between the pleading and the proof." *Mulligan* v. *U. S.* (1903), 120

Fed. 98, 99. "Thus where it is charged that the defendant stole a white horse, proof that a black horse was stolen will not suffice." *McCallister* v. *State* (1940), 217 Ind. 65, 68, 26 N. E. 2d 391.[4] If the state fails to prove any horse was stolen it is a failure of proof, but if the state proves a horse different from that charged was stolen it is a variance, but logically it is still a failure to prove the charge made. In either case it is cause for a motion for new trial because the verdict or finding of the court would not be sustained by sufficient evidence. Section 9-1903, Burns' 1942 Replacement (9th cause). Many of the decisions of this court have decided an issue of variance as being merely a failure of proof without discussing the fact that technically there was a variance. In some of the decisions the charge is not set forth and the decision is rested upon a failure to prove an essential element of the statute creating the offense. The cases on variance and failure of proof have been difficult to find in the digests and texts and the task of endeavoring to discover and examine all of them has resulted in a considerable expenditure of time. Not all of the reasoning can be reconciled with the well established rules under our Bill of Rights and the better reasoned cases, but the general rule has been well recognized from the first that "a failure to prove a material allegation descriptive of the offense is fatal." *Couch* v. *State* (1951), 229 Ind. 326, 335, 97 N. E. 2d 860. It would unduly extend this opinion to discuss many of the cases, but for the benefit of the profession the following have discussed or decided the question:

*McCormick* v. *State* (1955), 234 Ind. 393, 127 N. E.

---

4. "If the thing charged to have been stolen is described in the indictment with greater particularity than the law requires, the unnecessary descriptive averments cannot be rejected as surplusage, but must be proved as alleged." 36 C. J. 852, §372.

2d 341 (fraudulent check) ; *Redmon* v. *State* (1955), 234 Ind. 306, 126 N. E. 2d 485 (embezzlement by warehouseman) ; *LaMar* v. *State* (1953), 231 Ind. 508, 109 N. E. 2d 614 (procuring inmate for house of prostitution) ; *Tullis* v. *State* (1952), 230 Ind. 311, 103 N. E. 2d 353 (obtaining money by fraudulent check) ; *Gardner* v. *State* (1951), 229 Ind. 368, 97 N. E. 2d 921 (perjury) ; *Crouch* v. *State* (1951), 229 Ind. 326, 97 N. E. 2d 860 (obtaining money by false pretense) ; *Shelby* v. *State* (1951), 229 Ind. 186, 96 N. E. 2d 340 (vehicle taking) ; *Gentry* v. *State* (1945), 223 Ind. 459, 61 N. E. 2d 641 (receiving stolen goods) ; *Rogers* v. *State* (1942), 220 Ind. 443, 44 N. E. 2d 343, 143 A. L. R. 1074 (issuing fraudulent check) ; *McCallister* v. *State* (1940), 217 Ind. 65, 26 N. E. 2d 391 (buying stolen goods) ; *Hicks* v. *State* (1937), 213 Ind. 277, 11 N. E. 2d 171, 12 N. E. 2d 501 (murder first degree) ; *Shelton* v. *State* (1936), 209 Ind. 534, 199 N. E. 148 (involuntary manslaughter) ; *Sullivan* v. *State* (1928), 200 Ind. 43, 161 N. E. 265 (keeping house of ill fame) ; *Nedderman* v. *State* (1926), 198 Ind. 187, 152 N. E. 800 (fraudulent check) ; *Davis* v. *State* (1923), 193 Ind. 650, 141 N. E. 458 (perjury) ; *Culley* v. *State* (1923), 192 Ind. 687, 138 N. E. 260 (grand larceny) ; *Brockway* v. *State* (1923), 192 Ind. 656, 657, 138 N. E. 88, 26 A. L. R. 1338 (involuntary manslaughter—place of death) ; *Gavalis* v. *State* (1922), 192 Ind. 42, 135 N. E. 147 (possession of liquor with intent to sell) ; *State* v. *Spahr* (1917), 186 Ind. 589, 117 N. E. 648 (murder) ; *State* v. *Gross* (1911), 175 Ind. 597, 95 N. E. 117 (perjury) ; *State* v. *Ferris* (1909), 171 Ind. 562, 86 N. E. 993 (false pretense) ; *Brown* v. *State* (1906), 166 Ind. 85, 76 N. E. 881 (obtaining goods by false pretense) ; *Taylor* v. *State* (1891), 130 Ind. 66, 29 N. E. 415 (robbery) ; *Schill-*

*ing* v. *State* (1888), 116 Ind. 200, 18 N. E. 682 (selling liquor) ; *Lewis* v. *State* (1887), 113 Ind. 59, 14 N. E. 892 (larceny) ; *Dennis* v. *State* (1883), 91 Ind. 291 (public nuisance) ; *State* v. *Wingo* (1883), 89 Ind. 204 (larceny) ; *State* v. *Pease* (1881), 74 Ind. 263 (forgery) ; *Sumner* v. *State* (1881), 74 Ind. 52 (keeping pool table for gaming) ; *McCrillis* v. *State* (1879), 69 Ind. 159 (burglary) ; *Squier* v. *State* (1879), 66 Ind. 317 (minor playing billiards) ; *Rooker* v. *State* (1878), 65 Ind. 86 (forgery) ; *Morgan* v. *State* (1878), 61 Ind. 447 (larceny) ; *Hart* v. *State* (1877), 55 Ind. 599 (larceny) ; *Sharley* v. *State* (1876), 54 Ind. 168 (forgery) ; *Robb* v. *State* (1875), 52 Ind. 216 (horse racing) ; *Keller* v. *State* (1875), 51 Ind. 111 (false pretenses) ; *Bartender* v. *State* (1875), 51 Ind. 73 (suffering minor to play game of pigeon-hole) ; *Greer* v. *State* (1875), 50 Ind. 267 (assault and battery with intent to rape) ; *Carr* v. *State* (1875), 50 Ind. 178 (keeping gaming house) ; *McLaughlin* v. *State* (1873), 45 Ind. 338, 347 (intoxicating liquor) ; *Wertz* v. *State* (1873), 42 Ind. 161 (nuisance) ; *Ball* v. *State* (1866), 26 Ind. 155 (forcible entry and detainer) ; *Widner* v. *State* (1865), 25 Ind. 234 (larceny) ; *Porter* v. *State* (1860), 15 Ind. 433 (forgery) ; *Swinney* v. *State* (1860), 14 Ind. 315 (usury) ; *Whitney* v. *State* (1858), 10 Ind. 404 (sale of lottery tickets) ; *Wilkinson* v. *State* (1858), 10 Ind. 372 (forgery) ; *Wilcox* v. *State* (1845), 7 Blackf. 456 (gaming) ; *Tate* v. *State* (1839), 5 Blackf. 174 (betting on election) ; *State* v. *Tincher* (1898), 21 Ind. App. 142, 51 N. E. 943 (public intoxication) ; *Fulk* v. *State* (1898), 19 Ind. App. 356, 49 N. E. 465 (nuisance).

In *State* v. *Spahr* (1917), 186 Ind. 589, 117 N. E. 648, the appellee was indicted for murder. The opinion is so carelessly written that it is not disclosed whether

it was murder in the first or second degree. The appellee was acquitted by a jury. Instruction No. 9½ stated that if the deceased was killed by a brick or stone instead of a shovel, as charged in the indictment, he should be found not guilty. This court, without noticing the provisions of our Bill of Rights, and without reviewing the many Indiana cases on variance, held the instruction erroneous. This case has never been cited a single time since it was filed, but it has been avoided as an anomalous interloper in the cases on homicide. Not one of the many distinguished jurists who have been members of this court since that time ever used it to decide an issue on variance, and we cannot assume they were not aware of its reasoning or result.

The Spahr case, *supra*, treated the allegation as to the manner and means of death as an unessential allegation. But in *Alderson* v. *State* (1924), 196 Ind. 22, 28, 29, 145 N. E. 572, where the indictment was for murder in the first degree, this court emphatically repudiated that position, and said:

> "The rules of criminal pleading contemplate the innocence of the accused and are assumed to contain enough to inform an innocent man of the facts to be shown against him . . .
> "In an indictment for murder, a statement of the manner of the death and the means by which it was effected, is indispensable."

If the Legislature thought the rule should be different, it would have said so as it did in the requirements of a charge of murder in the second degree and manslaughter. Section 9-1115, Burns' 1942 Replacement.[5]

---

5. "In an indictment for murder in the second degree, or in an indictment or affidavit for manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death was caused. . . ." Section 9-1115, Burns' 1942 Replacement.

In *Crickmore* v. *State* (1938), 213 Ind. 586, 12 N. E. 2d 266, *Peats* v. *State* (1938), 213 Ind. 560, 12 N. E. 2d 270, and *Hicks* v. *State* (1937), 213 Ind. 277, 11 N. E. 2d 171, this court was concerned with issues of variance. If the Spahr case, *supra*, had been considered as well decided, it would have been cited. In the Hicks case, *supra*, this court was very careful to prove there was no variance between the proof and the manner and means of death charged, by correctly holding that if one of the acts charged be proved to be a proximate cause of death, that was sufficient.

All the case of *McCallister* v. *State* (1940), 217 Ind. 65, 26 N. E. 2d 391, decided was there was no variance in failure to prove a nonessential and immaterial allegation as to where the property had been stolen. The Indiana cases have always been uniform on this rule. But strangely enough, even the dicta of this case fails to refer to the Spahr case, *supra*. Nor does *Lucas* v. *State* (1918), 187 Ind. 709, 121 N. E. 274, furnish any help in deciding the appeal at bar. All it decided was that proof of possession was sufficient evidence of ownership in a charge of larceny, and "ordinarily proof of possession or control in the party from whom the property is taken will sustain an allegation of ownership." Page 711. Larceny involves a trespass to possession, so if the goods be embezzled, there is no larceny.

The English cases after the adoption of our Bill of Rights are not persuasive in deciding what is a material allegation of a criminal charge. There the acts of Parliament become the supreme law of the land, and since one session cannot bind a succeeding session, Parliament is legally free to change the law of the British Bill of Rights, the Petition of Rights, or even the Magna Charta. But our Bill of Rights is not subject

to such legislative tinkering. Section 13 contemplates that the state must make a specific charge of crime, whether the accused be proved guilty or not. It would be futile to require the specific charge, and then not compel the state to prove what it charged. Nor is it any reproach to the law or administration of justice to compel the state to allege what it expects to prove, and then prove what it represents it will prove. To reason that the accused was not harmed, because there may be probative evidence of guilt, begs the question, for it ignores the mandate of the constitution as well as the presumption of innocence. Any accused is harmed when he has been deprived of a constitutional or legal right for his protection. The concept of justice embodied in our Bill of Rights gives the guilty the same protection as the innocent. "Society is more interested that the guilty should be punished according to law than that they should be merely punished." *Sage* v. *State* (1889), 120 Ind. 201, 204, 22 N. E. 338, 339. Whenever we clip a constitutional right to fit the facts of a particular appeal, and relieve the prosecuting officials from their duty to use reasonable care in investigating the facts and drafting a proper indictment, we sanction decisions by judges and not by courts, and government by men and not by laws.[6]

We cannot countenance a rule that the law does not require greater certainty in indictments and affidavits than the law requires in civil pleadings. The loose talk in too many opinions that this is the rule ignores Section 13 of the Bill of Rights. We already noted that

6. "And if this court, for the sake of sustaining the conviction in this case [murder] construes away some of the requirements of the statute, the true test by which to determine the validity of an indictment is destroyed, and in each succeeding case we shall be expected to depart further and further from the statute, till the only rule left will be the mere discretion of the court in each particular case." Perkins, J., in *Shepherd* v. *State* (1876), 54 Ind. 25, 29.

*Hinshaw* v. *State* (1919), 188 Ind. 147, 122 N. E. 418, *supra,* followed in *Bowen* v. *State* (1920), 189 Ind. 644, 128 N. E. 926, *supra,* held unconstitutional §2-1005, Burns' 1946 Replacement, permitting the pleading of conclusions and participial expressions in criminal cases.[7] When a civil complaint is tested by demurrer, all presumptions are in favor of the complaint. 1 Lowe's Work's Ind. Practice, §14.39 and authorities cited. In criminal prosecutions, the charge is construed against the state. *Bruce* v. *State* (1952), 230 Ind. 413, 104 N. E. 2d 129, and authorities cited.

If the state had charged the decedent was killed by a gun loaded with gunpowder and metal bullets, it would be a fatal variance to permit a conviction to stand when the evidence showed he was killed by a blow-gun, or an air rifle, or a bow and arrow, although each weapon throws missiles that could cause death. Hand grenades can be made of any material from tin cans filled with firecrackers to bottles filled with nitroglycerine. It could hardly be contended that the state could allege murder in the first degree was committed by throwing a bottle of nitroglycerine and sustain the charge by proving the bottle contained a firecracker. In this appeal, the state deliberately chose to prejudice and inflame the minds of the jurymen against the accused by making a false charge that the grenade was loaded with nitroglycerine, and then bolster the charge by a willing witness who falsely represented there was nitroglycerine in the explosive. When the state failed to prove this essential allegation, the verdict was not sustained by sufficient evidence.

It has been argued that the appellant did not properly

---

7. Nor do we have any procedure whereby a defendant can move to require the state to furnish a bill of particulars as is provided in federal prosecutions. Rule 7f Fed. Rules of Criminal Procedure.

raise the question of variance in the trial court. Cause nine (9) of §9-1903, Burns' 1942 Replacement, grants a new trial "When the verdict of the jury or the finding of the court is contrary to law or is not sustained by sufficient evidence." This statute says nothing about setting forth a variance, and the ninth cause covers such a case. It is conceded there are many Indiana cases holding that a defendant must object to a variance at the time the evidence is offered, or it is waived. The rule was borrowed from the practice in civil cases. *Graves* v. *State* (1889), 121 Ind. 357, 23 N. E. 155, and the writer followed the rule without question in *Utley* v. *State* (1950), 228 Ind. 210, 91 N. E. 2d 355. It is now time to question the rule to see if there ever was any reason for it in the first place.

The late decisions on fraudulent checks furnish good examples to illustrate there is no logic in requiring an objection to evidence of variance. In *Tullis* v. *State* (1952), 230 Ind. 311, 103 N. E. 2d 353, appellant was charged with obtaining $200 in money by issuing a fraudulent check. Obviously, under a plea of not guilty appellant had the right to defend on the ground either that he never gave any check at all, or if he did, that it was given in payment of an obligation. If the state's evidence discloses the check was given in payment of an obligation, why should appellant be compelled to object to the introduction of such evidence when he has the undoubted right to introduce the same evidence in his own behalf? In this case we did note that a variance was a failure of proof by the following language by Chief Justice Gilkison:

> "The evidence heretofore noted is definitely to the effect that the check, which is the basis of the prosecution, was given in payment of an obligation and not for the purpose of obtaining money. This evidence is not sufficient to sustain a conviction

of a charge of issuing a fraudulent check to obtain money. There is a fatal variance amounting to a failure of proof between the averments of the charging affidavit and the evidence produced at the trial. *Rogers* v. *State, supra.* See also: *McGuire* v. *State* (1875), 50 Ind. 284, 286; *Thetge* v. *State* (1882), 83 Ind. 126." Page 314.

In *Rogers* v. *State* (1942), 220 Ind. 443, 44 N. E. 2d 343, 143 A. L. R. 1074, evidence that a check was delivered in cash payment for a steer did not prove the check was given in payment of an obligation. The opinion by Judge Fansler correctly held "the cases clearly hold that the giving of a check to obtain property and the giving of a check in payment of an obligation are separate and distinct offenses, and it necessarily follows that evidence of one is not sufficient to sustain a conviction of the other." Page 445. In *McCormick* v. *State* (1955), 234 Ind. 393, 127 N. E. 2d 341, the appellant was charged with obtaining credit in the sum of $125 by a fraudulent check, but the evidence disclosed the check was given as cash payment for a used car. We decided this was a failure of proof, and reasoned " 'This court has held that a failure to prove a material allegation descriptive of the offense is fatal. *Foreman* v. *State* (1929), 201 Ind. 224, 167 N. E. 125.' *Crouch* v. *State* (1951), 229 Ind. 326, 335, 97 N. E. 2nd 860, 863. 'If any essential allegation of the offense charged is not proved, the verdict is not sustained by sufficient evidence and is contrary to law. *Price* v. *State* (1933), 204 Ind. 316, 184 N. E. 181; *Chapman* v. *State* (1901), 157 Ind. 300, 61 N. E. 670.' *Carrier* v. *State* (1949), 227 Ind. 726, 730, 89 N. E. 2nd 74, 75."

The rule in civil cases requiring an objection to evidence of a variance permits the proponent to amend his pleading, but there is no such liberal rule permitting amendments of an indictment or affidavit. Sections

9-1124 and 9-1133, Burns' 1942 Replacement, do not permit the state to amend a charge as to a matter of substance after a defendant has pleaded thereto. *Gullett v. State* (1953), 233 Ind. 6, 116 N. E. 2d 234; *State ex rel. Kaufman v. Gould* (1951), 229 Ind. 288, 291, 98 N. E. 2d 184; *Rogers v. State* (1948), 226 Ind. 539, 82 N. E. 2d 89; *Way v. State* (1946), 224 Ind. 280, 66 N. E. 2d 608. Since the state cannot amend as to a matter of substance after the defendant pleads in bar, there can be no reason for requiring the defendant to object to evidence by the state which proves the defendant not guilty of the offense charged. Under §9-1132, Burns' 1942 Replacement, the defendant can offer any defense, except insanity, under the general issue. If the state proves what the defendant may prove in his defense, it is wholly absurd to require the defendant to object to such evidence, and then compel him to introduce such evidence in his own behalf. Appellant's motion for new trial questioned the sufficiency of the evidence, and that is all that was required of him.

Judgment reversed, a new trial granted.

Bobbitt, Landis, Achor and Arterburn, JJ., concur in the reversal for the giving of Instruction No. 10, but disagree with the reasoning on variance.

### Concurring Opinion

Arterburn, J.—I concur with Chief Justice Emmert in the granting of a new trial in this appeal on the ground the jury was erroneously instructed. I further concur with respect to all questions considered in his opinion except that of variance between the proof and the indictment. In my opinion, the variance is immaterial and I further think the error, if any, must be raised by an objection specifically pointed out to the trial court at the time it arises.

The indictment alleged that one, Trigg, was killed by

the defendant with a hand grenade "loaded with nitroglycerine." Judge Emmert has done a scholarly bit of chemical explosive research which is highly instructive, showing that T. N. T. with which the grenade was loaded contains no nitroglycerine in fact. Of this scientific fact we must assume judicial knowledge. As a result there is variance in the language of the charge from the proof on trial.

Since the majority of the court brothers, Bobbitt, Achor and Landis, agree with me on the question of variance and this case is to be retried, I deem it expedient to offer some guidance to the trial court and counsel in the further proceedings in this case.

The question arising here for our decision is whether or not the variance between the proof that the hand grenade contained T. N. T., and the charge in the indictment that it was loaded with nitroglycerine, is a fatal variance and vitiates the trial and conviction of murder in the second degree.

Not all variances between allegations in the charge and the evidence at the trial are fatal. Technical and trifling errors in spelling causing a slight variance in names, places, time, values, etc., are usually not sufficient to invalidate criminal proceedings. *State* v. *Rardon; State* v. *Montgomery* (1943), 221 Ind. 154, 46 N. E. 2d 605; 40 C. J. S., Homicide, §175, p. 1075.

The strict technical rules formerly covering the subject have been greatly relaxed in recent years either by statute or more liberal views of the court. The modern trend of judicial decisions is in the direction of determination of the question of variance in criminal proceedings on the basis of substance rather than an arbitrary technical reason. The courts are guided primarily by the constitutional safe-

guard protecting the accused. *Schuble* v. *State* (1948), 226 Ind. 299, 79 N. E. 2d 647; Underhill's Criminal Evidence, 4th Ed., p. 106; 2 Wharton's Criminal Evidence, 11th Ed., p. 1804.

The super technicality demanded by the old common law served its purpose in a period when punishment was shockingly severe. The practical sense of the present age demands that the guilt or innocence of an accused shall be determined upon proof and that immaterial variances and refinements shall not be available as technicalities to escape punishment for the commission of a crime. *Lucas* v. *State* (1918), 187 Ind. 709, 121 N. E. 274.

Courts have been subjected to frequent criticism in the past in this field. Procedure is a means to an end; it is not an end in itself. It should not thwart a decision on the merits. Every party is entitled to a fair trial on meritorious issues arrived at, but not to a trial which is not upon the merits. A miscarriage of justice does not enhance either the standing of the judicial system or the prestige of the legal profession.

In this case, as too often occurs, the charge has been made more specific than is required by the law, with the result that upon presentation of the evidence, there is a variance from a specific allegation in the indictment. An allegation that the hand grenade was loaded with "a dangerous and high explosive" or like language would have sufficed in this case.

It is frequently said that if the state sees fit to be more specific in the allegation of the offense charged than the law requires, the state is, nevertheless, bound to prove such detailed specification without variance upon trial. This is not a correct statement of the principle involved. Unnecessary descriptive material in a charge is surplusage. It need not be

established in the proof and if there is a variance in the evidence from such unnecessary particularity it does not vitiate the proceedings unless it is shown that the defendant has been misled or prejudiced thereby. *Schuble* v. *State, supra; Dixon* v. *State* (1945), 223 Ind. 521, 62 N. E. 2d 629; Justice Story in *U. S.* v. *Howard* (Case No. 15,403), (3 Sumn. 12), 26 Fed. Cas., p. 388; *Boos* v. *State* (1914), 181 Ind. 562, 105 N. E. 117; *Foust* v. *State* (1928), 200 Ind. 76, 161 N. E. 371. This is in harmony with the statutory enactment in Indiana. Acts 1905, ch. 169, §192, p. 584, being §9-1127, Burns' 1942 Replacement.

Fansler, J. in *McCallister* v. *State* (1940), 217 Ind. 65, 26 N. E. 2d 391, on page 71 said in this connection:

"The decisions indicate a tendency to tolerate a greater variance between allegations and proof *where the allegations are not necessary*. But, from what we have seen from Chitty, it appears that the early cases, like the later ones just cited, looked to the materiality of the variance. It is true that in the Dennis case, and in other early Indiana cases, it is said that unnecessary descriptive allegations must be proven precisely as charged. In some of these cases the variance may have been material, but the court seems to have considered that the variance would be fatal regardless of materiality. The conclusion cannot be approved, since it is not supported by precedent or sound reason and has not been countenanced in the modern cases." (Our italics.)

When we seek the reason behind the rule defining the material or fatal variance as distinguished from an immaterial one in a criminal proceeding, it becomes apparent where the line is drawn.

It has been said:

"In determining whether a variance is material, the question to be decided is, does the indictment so far fully and correctly inform the defendant of the criminal act with which he is charged that,

taking into consideration the proof which is introduced against him, he is not misled in making his defense, or placed in danger of being twice put in jeopardy for the same offense?"

Underhill's Criminal Evidence, 4th Ed., p. 106, *supra*.

This court has said:

". . . A variance, to warrant a reversal of a judgment on appeal to this court, must be a substantial one, *such as might mislead the defense, or expose the defendant to the peril of being put twice in jeopardy for the same offense.*" (Our italics.) *Oats* v. *State* (1899), 153 Ind. 436, 439, 55 N. E. 226.

In other words, the test is, (1) was the defendant misled by the variance in the evidence from allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby?; (2) will the defendant be protected in the future criminal proceeding covering the same event, facts, and evidence against double jeopardy? *State* v. *Rardon; State* v. *Montgomery, supra*; 21 Ind. L. J., p. 50, and cases cited.

The logic of this test becomes compelling because of two constitutional guaranties of the accused in criminal prosecutions.

Under Art 1, §13, of the Constitution of Indiana, the defendant is entitled "to demand the nature and cause of the accusation against him, and to have a copy thereof." Item No. 1 above meets this requirement if the charge contains allegations sufficiently definite that the defendant will not be misled as to the offense with which he is charged, and which he must prepare to meet upon the trial. The charge would be sufficiently specific if the defendant can reasonably anticipate the nature of the evidence with which he will be confronted on trial.

Art. 1, §14, of the Constitution of Indiana also provides that "no person shall be put in jeopardy twice for the same offense."

Item No. 2 above requires that the charge must be sufficiently specific so that in any event after jeopardy has attached, if a second like charge is filed covering the same evidence, events or facts against the accused, the defendant will be protected. *United States* v. *Remington* (C. C. A. 2d 1933), 64 F. 2d 386.

It, therefore, becomes evident that a variance of the proof on the trial in the criminal case from the allegation charged, to be immaterial and of no consequence upon the trial, must avoid and not contravene the two constitutional guaranties set forth above. With these two constitutional provisions in mind as a guide, we have in this state also a statutory provision which is pertinent to this question.

"No indictment or affidavit shall be deemed invalid, nor shall the same be set aside or quashed, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected for any of the following defects:

. . .

"Tenth. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." §9-1127, Burns' 1942 Replacement, *supra*.

The statute applicable to variances in civil procedure seems to be nothing more than a restatement of one of the common law principles here considered.

"No variance between the allegations in a pleading and the proof is to be deemed material, unless it have actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must be shown in what respect he has been misled. . . ."

Acts 1881 (Spec. Sess.), ch. 38, §130, p. 240, being §2-1063 Burns' 1946 Replacement.

In other words it seems to be well settled in this state and most jurisdictions that the accepted rule in determining the materiality of a variance in a criminal proceeding is that it must be of such substantial character as to mislead the accused in preparing and maintaining his defense or the variances of such a degree as is likely to place him in second jeopardy for the same offense.

In this connection the point has been made by the state that there is no showing in this record that any objection was made by defendant at the time the evidence was offered by the state with reference to the variance in the trial, specifically setting forth the variance between the proof offered and the charge in the indictment. It is further urged that the question is raised for the first time on appeal. The defendant contends otherwise. It is unnecessary to determine this particular question of fact since there will be a retrial. Nevertheless, we should call the trial court's and counsel's attention to the law in this state which requires that to raise the question properly, the defendant shall not only object to the introduction of any evidence varying from the specifications in charge at the time it is tendered, but should point out to the trial court the specific variation and that the defendant is thereby either misled and prejudiced in his defense or runs the risk of being placed in jeopardy for the second time for the same offense.

In *Utley* v. *State* (1950), 228 Ind. 210, 91 N. E. 2d 355, the defendant claimed a material variance in the evidence from the place specified in the offense charged where the kidnapping was alleged to have taken place.

Emmert, Judge, speaking for the court, stated in part on page 215:

"Even if this witness were in error as to his answers, still no reversible error has been presented as to variance, since such error may only be saved by objecting to the evidence, which is a variance, at the time of its introduction at the trial, and if there be error in the court's ruling on the admission of such evidence, it must be assigned as a cause for a new trial. [citing authorities.] There were no objections made to the testimony as to the place from which the victims had been kidnapped, and there was no error in any ruling by the trial court in this matter."

See also: *Gillespie* v. *State* (1924), 194 Ind. 154, and cases therein cited, 142 N. E. 220.

Also, Myers, J., speaking for this court in *Mates* v. *State* (1929), 200 Ind. 551, 557, 165 N. E. 316, said:

"If appellant believed there was a fatal variance between the averments of the affidavit and the proof in the case, he ought to have seasonably interposed his objections in this respect during the trial in the lower court, and in the event of an adverse ruling have assigned it as a reason for a new trial."

There is reason in this rule. The trial court at the time of the objection should have the opportunity to determine whether or not the defense is prejudiced or injured by surprise or for other reasons. The court also has an opportunity to determine whether or not the defendant may be placed in jeopardy a second time with the same evidence being offered under the charge then being tried.

Of course, where the variance is of such a character or so great that an *essential allegation* of the offense has not been proved, there also may be a failure of evidence to sustain the verdict or finding. In such a case the error also may be raised under such a specification in a motion for a new trial, or on a motion for a directed verdict or finding. It should be

noted that the error raised in such a way is predicated primarily upon a total failure of proof of an essential element of the crime charged and not upon a mere variance in the proof.

Such is the situation with reference to the charge of issuing a fraudulent check to obtain property (a car) and proof shows it was given for credit. The statute specifies giving such a check to obtain "money, merchandise, property, credit, or thing of value." Acts 1927, ch. 201, §6, p. 576, being §10-2105, Burns' 1942 Replacement.

In *Rogers* v. *State* (1942), 220 Ind. 443, 44 N. E. 2d 343, at page 445, this court said:

> "The giving of a check to obtain property and the giving of a check in payment of an obligation are separate and distinct offenses, and it necessarily follows that evidence of one is not sufficient to sustain a conviction of the other."

In such instances there is a total failure of proof on an *essential statutory element* of the crime. That is not an immaterial variance such as we have here. *McCormick* v. *State* (1955), 234 Ind. 393, 127 N. E. 2d 341.

We recognize that the degree of variance in the proof from the allegations in the offense charged can be so wide that it is patent that an essential allegation of the offense charged is not proved or that offense which is proved is not the same one that is described in the charge. In the latter instance the defendant would be subjected to the risk of double jeopardy. For example, an indictment charging the defendant with murder "by striking and wounding and forcibly throwing said Mollie Starbuck and Beulah May Starbuck into a well" will not sustain a conviction on evidence which showed that Mollie Starbuck was put in great fear and agitation by the threats of the defendant and to the

extent that she lost her reason and jumped into the well and that by reason of her exposure and fright she died. *Gipe* v. *State* (1905), 165 Ind. 433, 75 N. E. 881.

A conviction based on an indictment for homicide by poisoning will not be sustained with proof of the commission of the homicide with a deadly weapon such as a gun. 30 C. J. Homicide, §340, p. 135; 40 C. J. S. Homicide, §182(c), p. 1083; *Sharwin's Case*, 1 East, P. C., p. 341.

However, where an indictment charged the defendant with murder by administering poison, stating specifically the kind of poison used although it need not have done so, it was not necessary that the proof correspond to the specific poison. *Carter* v. *State* (1851), 2 Ind. 617.

In another homicide case a variance was held immaterial where the indictment alleged a gun and the proof showed a pistol was used. *Sullivan* v. *State* (1924), 163 Ark. 353, 258 S. W. 980.

An allegation of a pistol and proof of a revolver used in the killing was held immaterial variance. *State* v. *Barr* (1937), 340 Mo. 738, 102 S. W. 2d 629.

An allegation of the use of a "revolving pistol" and the proof showing an automatic pistol was used, was held an immaterial variance. *State* v. *Webb* (1914), 254 Mo. 414, 162 S. W. 622.

In *State* v. *Spahr* (1917), 186 Ind. 589, 117 N. E. 648, this court said on page 592:

> "In the present case, the indictment charges that appellee killed Littler by striking him with a shovel but some of the evidence tended to show that he struck him with a stone or a brick. The nature of the attack, however, is essentially the same in either event and proof of either act would sustain a verdict of guilt as against an objection based solely on the ground of variance."

Chief Justice Spencer, in the *Spahr* case, quotes from 1 Michie on Homicide, pp. 559, 560 and 561 as follows:

"As to the allegation of the instrument by which death is inflicted, or the assault committed, there is no variance where the proof shows that another instrument than that alleged was used, where it was of a *similar nature* and caused the same character of wound or injury."

. . .

"The question in each case is whether the nature and character of the injury and the manner and means of inflicting it as proved is practically and substantially, though not identically, the same as that alleged. Thus, evidence as to a dagger, sword, bayonet, hatchet or other cutting instrument has been held to support the averment of a knife; striking with a stick, club, metal bar, or pistol an allegation of striking with a rock; striking with a piece of iron an allegation of striking with a piece of plank; shooting with a pistol, shotgun, rifle, musket, or any kindred weapon, an allegation of killing or assaulting with a gun; shooting with a gun an allegation of shooting with a pistol and strangling with a scarf or cord, an averment of strangling or choking with the hands." (Our italics.)

Of course, one charged with using a gun loaded with gunpowder and bullet to kill another could not be convicted under proof that a bow and arrow, blow gun, or poison was used, since, as stated above, the instrument must be "of a similar nature and cause the same character of wound or injury."

There is very little difference in the case before us, where it is charged the hand grenade was loaded with nitroglycerine, and proof showed it contained T.N.T. than a case of a defendant charged with murder by shooting with a gun loaded "with gunpowder and leaden bullets" and the proof on trial showed that a steel bullet was used, or where the defendant is charged with using a certain kind of poison and the proof was that of another kind. Such a variance is immaterial under ordinary circumstances, in the absence of an objection and a showing that the de-

fendant is surprised and harmed in making his defense. *Utley* v. *State, supra; Gillespie* v. *State, supra; Mates* v. *State, supra; Oats* v. *State, supra; Bigstaff* v. *State* (1930), 182 Ark. 174, 30 S. W. 2d 213.

Nitroglycerine and T.N.T. are much of the same general nature. Both are high explosives commonly used in the same general field. No issue was made during the trial in this case as to the character of the explosive, which would have any effect upon the manner or circumstances surrounding the commission of the alleged offense. No showing was made that the defendant was surprised by such immaterial variation in the evidence during the trial.

We do not wish to be understood as saying that under no circumstances would the variances above designated as immaterial be considered material or fatal. It is conceivable that in some circumstances and situations such variances might, upon proper objection at the proper time in the trial court, with a showing that the defendant has been misled in the preparation of his defense or case, become material. This might be true where the factual issues in the case on trial so developed that the extent of the explosion or other matters affecting its character went to the merits of the defense. In such a case, however, it is the duty of the defendant to make timely and proper objection when such variances occur in the trial with the suggestion and showing that he is thereby prejudiced and is being injured and harmed in the defense of his case, and has been misled in the preparation of same.

The variance here does not meet the test necessary to make it material and fatal to the criminal proceedings, namely, that the variance has misled the defendant in making his defense or places him in danger of double jeopardy and being tried a second time for the same acts.

It seems to us that we should not set a precedent in this case which would permit a defendant from evading punishment, for no reason other than an immaterial variance in the proof and the allegations in the crime charged, which is as slight as that in this case, without a showing of being harmed or prejudiced by such deviation.

As previously stated, we feel a new trial should be granted in this case, but not upon error committed with reference to a variance in the proof from the charge.

Bobbitt, Achor and Landis, JJ., concur.

NOTE.—Reported in 130 N. E. 2d 35.