HENDRICKSON v. STATE OF INDIANA.

[No. 569-S-123. Filed January 22, 1970. Rehearing denied March 5, 1970.]

*Albert W. Ewbank,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett.* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is a criminal prosecution instituted by an indictment in two counts. Count I of the indictment reads a follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that CLARENCE HENDRICKSON on or about the 11th day of July, A.D. 1967, at and in the County of Marion and in the State of Indiana, then and there being the duly elected and qualified Justice of Peace in and for Perry Township, in Marion County, Indiana, *unlawfully agreed to collect a certain account due INTERSTATE ICE, INC.*, a corporation, from MICHAEL MAIO, in the amount of Five Hundred Seventy-four and 50/100 Dollars ($574.50), and *under color of his office caused to be issued and served* upon the said MICHAEL MAIO and one ALICE FIELD *summonses purporting to be issued in Cause Numbers 0506 and 0507* of the Perry Township Justice of Peace Court entitled INDPLS. COAL & OIL CO. vs: MICHAEL MAIO AND ALICE FIELD and directing the said MICHAEL MAIO and ALICE FIELD to appear in said Justice of Peace Court; that thereafter said account in the sum of Five Hundred Seventy-four and 50/100 was paid by the said MICHAEL MAIO and the said CLARENCE HENDRICKSON, Justice of Peace on or about the 26th day of July, 1967, *unlawfully received the sum of Two Hundred Eight-seven And 25/100 Dollars ($287.25) from said INTERSTATE ICE, INC.*, a corporation, for said collection of the said sum of Five Hundred Seventh-four And 50/100 Dollars ($574.50) ; *that said acts by the defendant were not a part of defendant's official duties as said Justice of the Peace nor authorized by law*, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana" (emphasis added).

Count II of the indictment reads as follows:

"The Grand Jurors aforesaid, upon their oaths aforesaid, do further present that CLARENCE HENDRICKSON, on or about the 11th day of JULY, A.D., 1967, at and in the County of Marion and the State of Indiana, then and there being a judge of a court of the State of Indiana, to-wit: the elected and qualified Justice of Peace in and for Perry Township, in Marion County, Indiana, *did unlawfully engage in the business of collecting claims in that* he agreed

to collect a certain account due INTERSTATE ICE, INC., a corporation, from MICHAEL MAIO in the amount of Five Hundred Seventy-four and 50/100 Dollars ($574.50) and under color of his office caused to be issued and served upon the said MICHAEL MAIO and on ALICE FIELD summonses purporting to be issued in Cause Numbers 0506 and 0507 of the Perry Township Justice of the Peace Court entitled INDPLS. COAL & OIL CO. VS: MICHAEL MAIO AND ALICE FIELD, and directing the said MICHAEL MAIO AND ALICE FIELD to appear in said Justice of Peace Court; that thereafter said account in the sum of Five Hundred Seventy-four and 50/100 ($574.50) was paid by the said MICHAEL MAIO, and the said CLARENCE HENDRICKSON, Justice of the Peace, on or about the 26th day of July, 1969, unlawfully received the sum of Two Hundred Eighty-seven and 25/100 Dollars ($287.25) for collecting said account, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana." (emphasis added).

Appellant was found guilty upon both counts by the trial court.

As can be noted from the above quoted indictment, appellant, in his capacity as justice of the peace, was charged with issuing summonses purporting to be issued in causes docketed in the Perry Township Justice of the Peace Court against debtors of Interstate Ice, Inc. In response to said summonses the overdue debt was paid and appellant is charged with receiving one-half of the amount so paid.

Appellant's first contention refers to count one of the indictment. Count one is based upon Burns' Ind. Stat. Ann. § 10-3729 which reads in pertinent part as follows:

"It shall be unlawful for any justice of the peace to receive directly or indirectly any remuneration or thing of value from any litigant or any one on behalf of such litigant in any pending cause in this court except for costs and fees provided by law, or to receive any remuneration or thing of value from any one for doing any act under color of his office which act is not a part of his official duties nor authorized by law . . ."

Appellant argues that his conduct in issuing the summonses was not an act done "under color of his office which act is not a part of the official duties nor authorized by law." Of course, the issuance of a summons by a justice of the peace is authorized by law where a complaint is filed or action is initiated. Burns' Ind. Stat. Anno. § 5-301 et seq. In this case the evidence clearly shows that the summonses were issued with no complaint being filed and no cause actually docketed. The summonses issued by the appellant were in furtherance of an unlawful objective and not authorized. The constable testified that in this instance a zero was placed before the number on the summonses issued, while all others issued did not contain such a zero in the usual course of procedure in the justice of the peace court. He further stated that upon checking the docket he found no such cause represented by the numbered summonses. The issuance of the summonses was therefore unlawful, without authority, "under color of his office" and was not part of his official duties. We cannot say his conduct was authorized by law under the particular circumstances. "Color" legally means an appearance, semblance or an apparent right. Black's Law Dictionary, 4th Ed. defines color of office as follows: "Act unjustly done by the countenance of an office, being grounded upon corruption, to which the office is as a shadow and color." In our opinion, where an official process is issued unlawfully without the basis or background which makes it legal, it is done under color of the office issuing such a process, and in this case the summonses here clearly were issued under color of the office of the appellant as justice of the peace.

Appellant further claims a variance because the evidence shows the summonses were issued in the name of the Indianapolis Coal and Oil Company as the creditor, whereas the appellant collected an account in the amount of $574.50 due Interstate Ice, Inc. In our opinion there is no variance here, since that is exactly what the indictment alleges, and the evidence conforms to the indictment. It shows that Robert Sex-

son was President of Interstate Ice, Inc. and Indianapolis Coal and Oil Company; that it was an interlocking corporation, with a large portion of the stock held by the same persons. The evidence contributed by officers of Interstate Ice, Inc. clearly shows that the account was in the name of Michael Maio in the same sum as alleged, and that Maio testified that he paid the account to Interstate Ice, Inc. after he got the summons entitled "Indianapolis Coal and Oil Company." He knew it was for the same account.

At most we can only say there was some conflict in the evidence and this was resolved by the trier of the facts. Certainly the appellant was not misled by the allegations in the indictment nor is there any showing that he was harmed in any fashion, since the proof conformed to the charge. *Smith* v. *State* (1960), 241 Ind. 1, 168 N. E. 2d 199; *Madison* v. *State* (1955), 234 Ind. 517, 130 N. E. 2d 35.

It is apparent from the evidence, as the indictment charges, that the summons in the name of Indianapolis Coal and Oil Company was used to collect the account in the name of Interstate Ice, Inc. The evidence shows that prior to the issuance of the summons by the appellant, the appellant met with Robert Sexson, President of the Indianapolis Coal and Oil Company, who was also president of Interstate Ice, Inc., in Sexson's office at Indianapolis Coal and Oil Company to discuss the collection of the account referred to in the indictment. The appellant knew that Mr. Sexson was doing business under both names. Maio testified that when the summons was given him he called the Interstate Ice, Inc. Appellant's brief, in summarizing Maio's testimony, states in regard thereto that: "I [Maio] called Interstate Ice and told them, and paid the bill to Interstate Ice and did not appear in court, [and was told when I paid the bill I didn't have to appear]." The evidence is uncontradicted that thereafter appellant received half of the account, namely $287.25 by a check drawn on Inter-State Ice for services in making the collection. The evidence on count one is sufficient to sustain the judgment.

In regard to count two, that the appellant "did unlawfully engage in the business of collecting claims," there is no evidence in our opinion to sustain the charge of a practice or a business, since the court had before it only one instance of debt collection—that referred to in count one. *Snyder* v. *Heinrichs* (1944), 115 Ind. App. 129, 55 N. E. 2d 332 and cases therein cited; 93 A. L. R. 2d 90; 5A, Words & Phrases, p. 640, et seq. It is well settled in this state that the making of one loan is not a practice of engaging in the lending business that requires a license, nor is making one trip with passengers for pay engaging in the business of a public carrier. The cases are innumerable on this issue. In our opinion, the evidence is insufficient to sustain the conviction of count two.

The judgment of the trial court is affirmed as to Count One and reversed as to Count Two.

Hunter, C.J., and Givan, J., concur; DeBruler and Jackson, JJ., concur in result.

NOTE.—Reported in 254 N. E. 2d 331.